Nita M. Crawford *vs.* Robert M. Roloson.

Barnstable. March 8, 1926. — June 5, 1926.

Present: Rugg, C.J., Braley, Crosby, Pierce, & Wait, JJ.

*Boundary*, Variation by agreement. *Prescription*.

Where the starting point of a description in a deed dated 1878 by metes, bounds and surveyed courses has been marked for many years by a stone monument and the deed lines as determined by the courses and distances starting from the stone monument can be located upon the ground with mathematical exactness. such boundary should not be varied by a decree upon a petition filed in the Land Court in 1923 by a successor in title to one of the joint owners for registration of his title, although it appears that, a dispute as to the location of a boundary line running to the sea having arisen between the adjoining land owners in 1905, they orally agreed to its establishment in a location farther on the respondent's land than the location described in the deed, thus in effect making the angle of intersection of that boundary with the boundary preceding it in the deed over a degree smaller than the angle stated in the deed, and that the predecessor in title to the respondent in 1911 built a fence a short distance back on his own land paralleling the line thus established by oral agreement, which still stood, and that

the petitioner in reliance on the line so established had built structures and made use, in connection with a hotel on his land, of an adjoining beach in the area between the line shown in the deed and that so established by oral agreement; since no title would pass by force of such agreement unless followed by occupation, according to the line so adopted, which was adverse and under a claim of right and continued for twenty years or more.

PETITION, filed in the Land Court on January 17, 1923, for the registration of the title to certain land bordering on the sea in Barnstable.

In the Land Court, the petition was heard by *Davis*, J. So far as they related to the questions of law presented by the record, the trial judge found the following facts in substance:

The principal question in controversy was the boundary line between land formerly of Charles R. Codman, predecessor in title of the respondent, and Nickerson and Dottridge, predecessors in title of the petitioner. Nickerson and Dottridge in 1878 conveyed an irregular strip of land along their boundary line to Codman by a deed describing the land as containing two and one-half acres, more or less, the boundary line "beginning at the northwest corner at a point 25 yards from the nearest point where land of said Codman adjoins land of Slade, and thence running south 21 degrees west 281 feet, south 55 degrees east 192 feet, south 19 degrees west 61 feet, south 62½ degrees east to the sea, with a right of way to said Codman, his heirs, and assigns, to and from the shore over our land on the southerly side of the granted premises." The real controversy at the hearing was the location of the line, "south 62½ degrees east to the sea."

As to the point "at the northwest corner" of the grantor's land "25 yards from the nearest point where land of said Codman adjoins land of Slade," the judge found "the testimony shows that the stone monument north of the windmill was set in consequence of a dispute in regard to the boundaries at that point. It does not appear exactly when it was set, but it does appear that it was set in the spot at which the existing ancient farm fences cornered. It represents the corner of the Nickerson and Dottridge and Codman land

as actually existing in 1878, and is distant twenty-five yards from the corner of the Slade land as that corner was then established by ancient fences. This was the point of beginning in the deed of 1878. The course from that point called for by that deed coincides with a fence which has been standing for over twenty years and which ends at the boundary line established by the parties by over twenty years occupation, but is on the boundary line called for by the deed, both as to the course and distance."

The judge admitted evidence, that, owing to a dispute between the adjoining owners in 1905, a surveyor was employed and a line running to the sea orally agreed upon, and that in 1911 Codman built a fence slightly back on his own land from the line so agreed upon, which fence still was standing. The line so established by oral agreement in 1905 the judge established as the boundary line, denominating it the "Bourne line." It made the angle, described in the last boundary in the deed to Codman as "south 62½ degrees east to the sea," to be "south 61 degrees 18 minutes and 30 seconds east."

The decision of the judge of the Land Court continues: "I find no case exactly like this in the books. It somewhat resembles *Cleaveland* v. *Flagg*, 4 Cush. 76; *Miles* v. *Barrows*, 122 Mass. 579; *Iverson* v. *Swan*, 169 Mass. 582, and *Temple* v. *Benson*, 213 Mass. 128, but differs from each of those cases in some essential particular. The petitioner argues that it was clearly the intention of the parties to describe the courses and distances marked out by the stakes as originally placed by Dottridge and Childs. But it is what the parties actually did, not what they had previously planned to do, that governs. There was no reference to any of these stakes or to any other monument in the deed, direct or indirect. Nor was there any patent ambiguity in the deed itself, or latent ambiguity developed in applying the description to the ground. On the other hand, the whole course of the line in controversy was not visible on the ground. Its seaward end could not be seen from the point of departure on the upland, nor could the upland end of the line be seen from the beach. Its location was certain mathematically, but

for practical purposes was uncertain. It was necessary to have it located by a surveyor, and it was for this reason and for this purpose that Mr. Bourne made his survey in 1905 for all of the parties in interest.

"His line was accepted, and Col. Codman built his fence just far enough back therefrom to have it all on his own land. The petitioner has erected structures in reliance thereon, and made use of the beach in connection with the hotel in accordance therewith. The deed line, if mathematically carried out, will go straight through the petitioner's summer house. The petitioner's occupation however has not been maintained for over twenty years. On the other hand, the situation is not like that in *Iverson* v. *Swan*, where the 'building of the fence was not in pursuance of an agreement to settle a doubt, even in the parties' minds.' It was built just back from a line that had been established by Bourne for the very purpose of settling a doubt, or rather an uncertainty. It varied by a very small fraction from the correct angle at its starting point on the upland, with a resultant variation of about seven feet at the high water mark of 1878. But notwithstanding this variation, it was an attempt to place on the ground on behalf of all the parties the boundary line the location of which was at that point uncertain, not mathematically but practically. There was no latent ambiguity in the application of the line to the land, as in *Temple* v. *Benson*, but there was a latent uncertainty. The parties undertook in good faith to have this uncertainty determined. They adopted Mr. Bourne's determination, and they both acted on that determination. If it had not been for the unfortunate subsequent attempts by Mr. Bourne to locate the line which he had thus determined, there would have been no controversy. I think that the parties intended to be bound by the Bourne location, and that they were bound by it. I rule that the boundary line from the upland to high water mark is the line which I have found to be the Bourne line."

The exceptions saved by the respondent were to rulings by the trial judge admitting and acting upon evidence tending to show that subsequent to the deed of 1878, (viz.

in 1905), the parties established by parol a boundary line between them from the upland to high-water mark, on a line differing from the deed line as described in said deed by monuments, courses and distances; to a refusal by the judge to rule "that a parol agreement by the parties, even if such agreement were proved, so locating the boundary lines, or any of them, as to contradict the terms of the Codman deed of 1878, is not admissible to alter or vary the boundary lines described by monuments, courses and distances in said deed, unless accompanied by exclusive possession for at least twenty years prior to the commencement of suit," to a refusal by the judge to rule that "the boundary line must be located in accordance with the deed lines as described by courses and distances in the deed to Codman in 1878, starting from the stone monument north of the windmill"; to the ruling establishing the "Bourne line" as the boundary line, and to the ruling and decision that, "it having been found and determined that the existing fence running in a south-westerly direction from the stone monument north of the windmill corresponds with the first course in the deed to Codman in 1878, and that the deed lines, as determined by the courses and distances specified in said deed can be, and have been located on the ground with exactness, nevertheless that such deed lines are not controlling in fixing the boundary line from the upland to high-water mark."

The case was submitted on briefs.

*F. Rackemann & Harrison M. Davis,* for the respondent.

*F. E. Crawford & E. I. Smith,* for the petitioner.

BRALEY, J. This is a petition for the registration of the title of the petitioner to an estate in Barnstable including a narrow parcel of land running to Cotuit Bay. The respondent owns the adjoining shore property to the northeast of this strip of upland and shore. The exceptions state that the principal question in controversy was as to the location of the boundary line between the respondent's land and the irregular shaped strip of the petitioner's land running to the shore at low water mark as described in a deed from David Nickerson and John Dottridge to Charles R. Codman dated November 7, 1878. At the date of this deed Dottridge and

Nickerson owned the estates of both parties, Codman being the predecessor in title of the respondent. The line in dispute is described in the deed to Codman as follows: "beginning at the northwest corner at a point 25 yards from the nearest point where land of said Codman adjoins land of Slade, and thence running south 21 degrees west 281 feet, south 55 degrees east 192 feet, south 19 degrees west 61 feet, south $62\frac{1}{2}$ degrees east to the sea." It was found by the Land Court that the starting point of this description had for many years been marked by a stone monument, and that "The deed lines as determined by the courses and distances, starting from the stone monument to the north of the windmill, can be located upon the ground with mathematical exactness." But notwithstanding this express finding the trial judge ordered a decree establishing the boundary line in a different location although using the same bound as the starting point. There was evidence that the deed line had been fixed by a parol agreement of the predecessors in title of the parties; and that it warranted a finding of the running of the line accordingly. The respective owners in title doubtless could orally agree, that the deed line should be shifted so that each owner assented to a parol gift to the other of such portion of his own land as lay on the other side of the new boundary line. But no title would pass by force of such agreement unless followed by occupation according to the line adopted, which was adverse and under a claim of right for twenty years or more; a fact which is not shown by the record. *Wheeler* v. *Laird*, 147 Mass. 421. *Iverson* v. *Swan*, 169 Mass. 582. *Gray* v. *Kelley*, 190 Mass. 184, 187, 188.

The exceptions of the respondent to the refusal by the trial judge to rule, that the boundary line must be located in accordance with the deed lines as described by courses and distances in the deed of Codman in 1878 starting from the stone monument north of the windmill, must be sustained. *Temple* v. *Benson*, 213 Mass. 128. We do not find it necessary to consider the remaining exceptions.

*So ordered.*