MARY FULGENITTI & another *vs.* FRANCISCO CARIDDI & another.

Berkshire.     September 17, 1935. — October 31, 1935.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Boundary. Deed,* Construction. *Landlord and Tenant,* Lease for one hundred years or more. *Equity Pleading and Practice,* Master: findings, exceptions to report; Findings by judge; Appeal.

Findings by a master to which a summary of evidence under Rule 90 of the Superior Court (1932) relates, unless shown to be erroneous in law, have the same force as masters' findings in other cases where the evidence is not reported.

It could be found on the evidence that in an instrument stating a boundary line as being a certain distance from the corner of a house, the corner of the house proper was meant, not the corner of a small shed or lean-to attached to the side of the house.

Where the owner of the easterly of abutting parcels of land gave the owner of the other a five hundred year "lease" of a narrow strip along the west side of the lessor's land for use by the parties and their successors as a common passageway, and the easterly parcel was described in subsequent deeds as bounded by "lands of" successors of the lessee, it could be found on all the relevant instruments and other evidence that the west boundary of the easterly parcel, in the hands of a successor of the lessor, was the original westerly parcel formerly of the lessee, not such passageway, and that the successor's land included the passageway.

Acts of adjoining landowners showing the practical construction placed by them upon conveyances affecting their properties are often of great weight. Per Qua, J.

Though a purported lease of land was for a term of more than one hundred years, it did not convey the fee in the land.

In construing a deed, in the absence of evidence showing the existence on the land of monuments mentioned in the description, it may be assumed that such monuments are wherever they ought to be according to the true interpretation of the language of the deed.

A monument mentioned in a deed controls in case of a variance between it and a distance specified.

It *seems* that if a judge, hearing a suit in equity upon the report of a master, states that he makes a certain finding "at the request of both parties," this means that they agreed to that finding, not merely to his making some finding on the point.

Upon appeal in a suit in equity, it was not necessary for this court to determine the nature of the estate created by an instrument in issue, since the interpretation thereof favorable to the appellant was made in the trial court.

No exception lies to the report of a master on the ground of his failure to find a particular fact.

BILL IN EQUITY, filed in the Superior Court on July 5, 1933.

The decrees appealed from were entered by order of *T. J. Hammond*, J.

*J. N. Alberti,* (*W. J. Donovan* with him,) for the defendants.

*V. O. Coté,* (*W. F. Barrington* with him,) for the plaintiffs.

QUA, J. The plaintiffs, who are husband and wife, bring this bill against the defendants, who are also husband and wife, to have declared null and void a certain "lease," so called, of a driveway on land in which the plaintiffs claim to own the fee, to compel the removal of some fences and a "frame building" (referred to in the evidence as "chicken coops") alleged to have been erected or used by the de-

fendants, which encroach upon the driveway and upon land of the plaintiffs, for an injunction and for damages. The defendants appeal from an interlocutory decree granting a temporary injunction, from an interlocutory decree denying the defendants' motion to recommit to the master, from an interlocutory decree confirming the master's report with certain modifications and from a final decree ordering the removal of the structures, granting an injunction against further encroachment, and defining the rights of the parties in the way.

The premises of the plaintiffs and the premises now owned by the defendant Antonietta Cariddi are both located on the southerly side of West Main Street in North Adams. The driveway in question runs southerly from West Main Street between the houses on the respective premises, the plaintiffs' house being east of the driveway and the defendants' house west of the driveway. On September 12, 1853, Josiah Q. Robinson owned a large tract including the land now of the plaintiffs, and Samuel D. Groat owned a large tract including the land now of the defendant Antonietta. On that day Robinson "leased to the said Groat for the term of five hundred years all the right title and interest he had to the following described piece of land: — 'The land situated in the north village of Adams, and being part of my homestead place at the northwest corner thereof beginning on the south line of the road that leads from the north village of Adams to Williamstown at a stake and stones, thence south 10½ degrees west sixty feet, said line being five feet due east from the northeast corner of the house which said Groat purchased of L. C. Thayer and known as the John Mallery House, thence east 10½ degrees south ten feet, thence north 10½ degrees east sixty feet, thence west 10½ degrees north ten feet to the place of beginning for the express purpose and no other of a passageway or road to be used mutually for the benefit of said Robinson and said Groat their several heirs and assigns during said term and always to be kept open. And in consideration of said lease the said Groat agrees to and with said Robinson to keep up a proper and suitable fence

according to the times on the east side of said passage-way. . . .'"

The principal questions in the case relate to the location on the ground of the way described in this lease and of the westerly boundary of the plaintiffs' land, which the defendants contend does not extend to or under the way, and to the present rights, if any, of the parties in the way.

The master summarized a large amount of evidence in the body of his report and later incorporated that evidence by reference, together with other evidence, as a summary appended to his report at the request of the defendants, in accordance with Rule 90 of the Superior Court (1932). Evidence summarized under this rule, by the terms of the rule itself, can be considered only for the purpose of determining whether there is error in law in the findings or rulings to which objection has been taken. The findings of the master, unless shown to be erroneous in law, have the same force as in other cases where the evidence is not reported.

The master found that the defendants' present house is the same as the one described in the lease as "the John Mallery House," and that it has continued in the same location. Accordingly he found that the westerly line of the driveway described in the lease began at the road and ran south ten and one half degrees west sixty feet in a line which is five feet due east from the northeast corner of the defendants' house. There was ample evidence as to the identity of the house. The master was not obliged to find that by "the northeast corner of the house" the parties meant the corner of a shed about four and one half or five feet wide, which by 1866 was attached, apparently as a lean-to, along a part of the easterly end of the house. This shed was not finished inside. It had a dirt floor and no cellar. There was evidence that the east side of the house covered by the shed was clapboarded like the rest of the house. Even if the master found that the shed had been built by 1853, which he does not state, in determining what corner was referred to in the lease, he could have given credence to evidence that for many years, going back as far as 1866,

witnesses recalled the location of the driveway actually in use by successors in title to Groat and to Robinson, respectively predecessors in title to the present parties, from which it could have been found that the way was five feet from the corner of the main house. Acts of adjoining owners showing the practical construction placed by them upon conveyances affecting their properties are often of great weight. *Reynolds* v. *Boston Rubber Co.* 160 Mass. 240, 245. *Stevenson* v. *Erskine*, 99 Mass. 367, 375. *Ovans* v. *Castrucci*, 267 Mass. 600.

The judge rightly ruled that the lease did not convey the fee in the passageway, although the term exceeded one hundred years. G. L. (Ter. Ed.) c. 186, § 1. *Stark* v. *Mansfield*, 178 Mass. 76. This ruling made applicable the master's alternative finding that the westerly line of the plaintiffs' land begins on the street at the northwest corner of the right of way and runs south in accordance with the courses and distances mentioned in the lease. The evidence summarized by the master supports this finding. In 1873 Benjamin F. Robinson, devisee under the will of Josiah Q. Robinson, deeded the tract east of the passageway to William P. Hurd. The description commences at the road, now West Main Street, and runs "thence west on the . . . road to the passageway that J. Q. Robinson and S. D. Groat made a mutual lease each way; thence south on lands of John Doyle and lands of Ivory Witt to the new contemplated street . . . ." Doyle had succeeded to Groat's land, now land of the defendant Antonietta. For reasons stated below, it is unnecessary to determine whether this deed included the fee in the passageway. In 1878 Hurd conveyed to John Barry by description "Commencing on the south side of the highway . . . at the northeast corner of lands of John Doyle; thence southerly on lands of said Doyle about 94 feet to a stake and stones . . . ." We think that when this deed referred to "lands of John Doyle" it meant, or at least, under the circumstances disclosed, could be found to mean, the house lot owned in fee by Doyle and not the narrow strip sixty feet long which Doyle had the right to use only as a passageway. In this way alone can the course

"thence southerly on lands of said Doyle about 94 feet to a stake and stones" be made to agree exactly both with the physical situation on the ground and with the description in the lease, for if by "lands of said Doyle" was meant the passageway, and if the passageway was originally part of the Robinson homestead, as the lease says it was, the line could not continue south in the same course beyond the end of the way to the distance of "about 94 feet," but in order to continue on "lands of said Doyle" must necessarily turn to the west across the south end of the passageway only sixty feet from the point of beginning, and must then again turn to the south. A deed poll is to be construed most strongly against the grantor. *Ammidown* v. *Granite Bank,* 8 Allen, 285, 290. And it is proper in this connection to consider the improbability that a grantor who is conveying all his adjoining land would seek to retain for himself a merely nominal interest in a reversion without rent to a ten-foot strip after a term which still had nearly five centuries to run. The question being merely as to the construction of the meaning of words in the deed, G. L. (Ter. Ed.) c. 186, § 1, is not controlling. If by the wording of the description in the deed from Benjamin F. Robinson to Hurd in 1873, Hurd did not own the fee in the passageway at the time of his deed to Barry in 1878 (see *Gray* v. *Kelley,* 194 Mass. 533), that defect could be found to have been cured by another deed from Benjamin F. Robinson to Nancy Barry of "The lot of land that William P. Hurd conveyed to John Barry by deed dated January 5, 1878," followed by a deed from Nancy Barry to John Barry of "all and the same real estate conveyed to me by deed of Benjamin F. Robinson dated, etc." At this point then the master was justified in finding title to the fee in the passageway in John Barry. In subsequent deeds the land is described as bounded "on the west by lands of John Doyle" and by "lands of the estate of John Doyle." Finally, in 1911, one Spencer conveyed to the plaintiffs, "Commencing at an iron pipe on the southerly line of West Main Street and at the northeast corner of land owned now or formerly by the estate of John Doyle, thence southerly along the east line of land now or

formerly of the said John Doyle Estate about 125 feet to an iron pipe at the northwest corner of land now or formerly of John Lewis," thence easterly "about forty (40) feet" to an iron pipe, thence northerly half way between two houses to an iron pipe on the southerly line of the street, thence westerly on the street "about 34⅓ feet to the place of beginning." For reasons already stated in connection with the deed from Hurd to John Barry, we think the Doyle house lot, now land of the defendant Antonietta Cariddi, and not the passageway, could have been found to be the westerly boundary of the land deeded by Spencer to the plaintiffs. It does not appear that there was any evidence of the existence anywhere on the land of any of the iron pipes mentioned in Spencer's deed to the plaintiffs. In the absence of such evidence, the master could assume that they were wherever the true interpretation of the language of the deed would place them. See *Smith* v. *Smith*, 110 Mass. 302, 304. *Wilson* v. *Hildreth*, 118 Mass. 578, 581. On this construction of the plaintiffs' deed, the northerly and southerly lines of their lot are substantially longer than the "about 34⅓ feet" and the "about forty (40) feet" which their deed calls for, but when once the Doyle house lot is established as a monument, under the familiar rule, it controls over distances. *Van Ness* v. *Boinay*, 214 Mass. 340. *Stefanick* v. *Fortona*, 222 Mass. 83. *Holmes* v. *Barrett*, 269 Mass. 497, 499.

The difficulty in locating the property line has been due to the fact that the deeds in the chain of title of each abutter use the land of the other abutter as the boundary. But in addition to the master's findings the judge dealt with this matter himself by making a finding "at the request of both parties" to the suit that the property line between Robinson and Groat at the time of the lease ran in accordance with a designated line on a plan known as "Plaintiffs' Exhibit No. 3." The statement by the judge just quoted means that the parties agreed to this finding. Even if they did not intend to agree to the finding made, but intended only to agree that the judge should make some finding on the point, there is nothing to indicate on what evidence or exhibits the

finding made is based or to show that it is wrong. The master's report was confirmed subject to this finding. As far as the finding goes the parties are bound by it. From an examination of the copy of the plan "Plaintiffs' Exhibit No. 3," which is a part of the record, it seems possible that if the plan is correct the property line of 1853 as found by the judge does not exactly correspond with the property line and the lines of the way found by the master as of the present time. But we do not know that this is so. Although the defendants now object to the judge's finding, their objection is not based upon any variation between the two findings in the precise location of the line, but is based upon the same broad grounds upon which they object to the master's finding. In any event it does not appear that the final decree is less favorable to the defendants than it would have been if the finding of the master had stood alone.

We have not deemed it necessary to define the exact nature of the estate created by the so called lease. The master and the judge treated it as creating a right of way appurtenant to land of Groat, the lessee. See *Hollenbeck* v. *McDonald*, 112 Mass. 247. The plaintiffs have not appealed. The defendants contend that Groat's rights in the way passed to them although not mentioned in the deeds. This would not be true, and the defendants on the findings made, as they are not assignees of the lease, would derive under it no rights in the way, if the lease created an independent leasehold estate in the land comprising the way as distinguished from an easement appurtenant to the defendants' adjoining land. The defendants are not aggrieved by the manner in which the judge dealt with this matter. On the other hand, the plaintiffs as grantees of the reversion, on any construction of the lease, have all the rights of Robinson in the way. *Burden* v. *Thayer*, 3 Met. 76. *Taylor* v. *Kennedy*, 228 Mass. 390, 394.

There was no error in denying the defendants' motion to recommit. *O'Brien* v. *Logan*, 236 Mass. 507, 512. *Epstein* v. *Epstein*, 287 Mass. 248. *Pearson* v. *Mulloney*, 289 Mass. 508, 513.

We need not discuss in detail the defendants' exceptions to the master's report. We find no error in the manner in which the judge dealt with them. Those having substance are covered by what has been said above. Those based upon the failure of the master to make certain findings of fact were properly overruled. *A. T. Stearns Lumber Co.* v. *Howlett,* 260 Mass. 45, 73. Others are immaterial in any event. The master was not obliged to find that the "chicken coops" were maintained adversely as against the owners of the plaintiffs' premises. *Bartlett* v. *Roosevelt, Inc.* 258 Mass. 494.

The interlocutory decrees appealed from are affirmed. The final decree is to be modified by changing the time before which the structures are to be removed and the fence on the easterly side of the way relocated to a date thirty days after the entry of decree after rescript and as so modified is affirmed with costs.

*Ordered accordingly.*