ROBERT GALLINARO *vs.* RICHARD H. FITZPATRICK & another, trustees.

Suffolk. December 11, 1970. — March 8, 1971.

Present: SPALDING, CUTTER, SPIEGEL, REARDON, & QUIRICO, JJ.

*Contract*, For sale of real estate, Performance and breach. *Payment.*
    *Bills and Notes*, Check as payment, Presentment, Certification. *Dam-*
    *ages*, Counsel fees.

Evidence reported in a suit in equity did not show to be plainly wrong
    findings by the trial judge that sellers of real estate, who indicated to
    the purchaser when he gave them a check for the deposit that they
    would need the money "shortly" and were told by him that he had
    "to put some money in the account" and to "Wait a day or so," could
    "reasonably expect that within a day or so the purchaser would have
    deposited cash in the account so as to make the check good," which
    he did not do, and that the check was not accepted as payment of the
    deposit by the sellers. [10]
Where it appeared in a suit in equity that the plaintiff gave a check to
    the defendants in the amount of the deposit under an agreement for

sale and purchase of real estate, that two days later the defendants requested the drawee bank to certify the check but the bank refused, that two days thereafter the bank again refused to certify the check and a bank officer attached a slip thereto containing the notation "uncollected funds," referring to checks placed by the plaintiff three days previously in the account on which the deposit check was drawn, it was held that the defendants had properly presented the deposit check twice and that the refusals of certification justified them in then refusing to perform the agreement. [10]

Testimony by the plaintiff in a suit in equity that when he signed an agreement to purchase real estate from the defendants he did not know "anything about" an "alienation clause" in a first mortgage existing thereon, together with evidence that after an excusable refusal by the defendants to perform the agreement the mortgagee approved a mortgage application from the plaintiff, required conclusions that the plaintiff was neither induced to rely on a misrepresentation by the defendants in the agreement that the first mortgage did not contain an "alienation clause" nor did ever rely thereon to his detriment. [11–12]

Defendants entitled to dismissal of a suit in equity for specific performance of an agreement for sale and purchase of real estate were not entitled to an award of counsel fees. [12]

BILL IN EQUITY filed in the Superior Court on March 1, 1968.

The suit was heard by *Brogna, J.*

*Robert E. McLaughlin* for the plaintiff.

*Joseph P. Graham* for the defendants.

SPALDING, J. By this bill in equity the plaintiff seeks specific performance of a purchase and sale agreement for real estate, damages, and cancellation of a lease. The defendants in their answers sought the discharge of a mortgage and damages. A final decree was entered dismissing the bill and granting certain relief to the defendants. The plaintiff appealed. The judge made a report of material facts. The evidence is reported.

We summarize the findings of the judge as follows. The real estate in question is located at 354 Market Street in Brighton and consists of land and a building containing twenty-four apartments. These were owned by the defendants Richard H. Fitzpatrick (Fitzpatrick) and Joseph P. McHugh (McHugh) as trustees of the Fitz-Hugh Real Estate Trust (trust). At all times relevant to this case, the apartment building was under construction.

During the summer of 1967, one Arthur Speros (Speros), a real estate broker, approached the defendants concerning the availability of the property for sale. This conversation resulted in an oral agreement that the defendants would accept $300,000 with $50,000 in cash. A purchase and sale agreement was drawn, but never executed. Speros and his associate, Mr. William A. Katsenes (an attorney), commenced suit against the defendants for a brokerage commission, and made a real estate attachment on the property in question. This attachment was burdensome to the defendants because they wanted to obtain additional financing on this and other properties which the trust was considering purchasing. Further negotiations resulted in the preparation of another purchase and sale agreement. A meeting was held at the office of Mr. Katsenes on the evening of December 11, 1967, at which several alternate proposals were discussed. Finally, a purchase and sale agreement for $290,000 was executed by the parties. The plaintiff gave Fitzpatrick a check for $30,000 drawn on the Coolidge Bank and Trust Company of Watertown (Coolidge Bank). Gallinaro was at that time made aware of the fact that the defendants were negotiating for the purchase of other property and needed the $30,000 "shortly" to accomplish this. The check was signed by Mary M. Gallinaro, the mother of the plaintiff. Neither Fitzpatrick nor McHugh realized at that time that this was not a check of the plaintiff himself. As he handed the check to Fitzpatrick, the plaintiff said, "Don't run down to the bank tomorrow and try to cash this. I have to put some money in the account. Wait a day or so."

A release of the attachment was prepared and recorded the following day. In return, the plaintiff was given a note in the amount of $30,000 secured by a mortgage. This was intended as security for the return of the $30,000 deposit in the event the sale was not consummated. The mortgage was recorded on December 18, 1967. The purchase and sale agreement, in a separate page, contained an agreement that the plaintiff would take the property subject to the

existing first mortgage, and the defendants represented that their mortgage did not contain an "alienation clause."[1] During negotiations in November and again at the time of signing on December 11, 1967, alienation was discussed by the parties. The mortgage, which bore an interest rate of $6\frac{1}{2}\%$, did in fact contain an alienation clause. The bank later approved a mortgage application from the plaintiff made on February 2, 1968, for $230,000 at 7%.

December 11, the day the $30,000 check was given to the defendants, was a Monday. The next day Gallinaro made a deposit of $29,800 in the joint account of his mother and father in the Coolidge Bank. This deposit brought the total balance in the account to over $30,000. The deposit consisted of $7,087 in cash, the rest in checks. One of these checks was a treasurer's check for $20,000 on the Garden City Trust Company. On Wednesday, December 13, Fitzpatrick brought the $30,000 check given by the plaintiff to the Coolidge Bank and asked that it be certified. The bank refused. He returned with the check on Friday, December 15, and made the same request. The bank again refused to certify the check, and an officer of the bank attached a slip to it containing the notation "uncollected funds." Thereupon, Fitzpatrick called Miss Sylvia Katsenes (an attorney and the sister of Mr. Katsenes, who had drawn up one of the purchase and sale agreements) and told her the deal was off because the check had been twice presented and could be neither certified nor cashed. At no time thereafter were McHugh or Fitzpatrick offered $30,000 in cash or its equivalent.

On January 9, 1968, Fitzpatrick was notified by Mr. Katsenes that Gallinaro would be at the Suffolk registry of deeds on March 1 at 11 A.M. ready to take title to the property. The defendants did not appear, although the plaintiff was there, ready to go through with the transaction.

The judge found that the defendants were justified in re-

---

[1] As used by the parties, the words "alienation clause" meant a provision in the mortgage that in case of a transfer of the property the mortgage, at the option of the mortgagee, would become due and payable.

fusing to carry out the terms of the agreement because of their inability to get the $30,000 deposit check certified. He also found that the misrepresentation concerning the alienation clause did not give rise to damages. The judge entered a final decree dismissing the bill, ordering a discharge of the recorded mortgage to the plaintiff and surrender of the note secured thereby to the defendants, and ordering the plaintiff to pay to the defendants' counsel fees in the sum of $2,000.

1. The plaintiff argues that the finding that the defendants "could reasonably expect that within a day or so the purchaser would have deposited cash in the account so as to make the check good" was plainly wrong. This argument is based on the use of the phrase "within a day or so" and on what the plaintiff terms "normal procedure" in such a transaction contemplating the deposit of checks rather than cash. From a careful examination of the testimony we are unable to say that the trial judge was "plainly wrong" in making his finding. His finding must, therefore, stand. *Yankee Network, Inc.* v. *Gibbs*, 295 Mass. 56, 59.

2. The next point pressed is that the evidence required a finding that the check for $30,000 was accepted as payment of the deposit on the purchase and sale agreement. Whether a check is received and accepted as an absolute payment was a question of fact for the judge in view of all the circumstances attending its delivery. *Dutton* v. *Bennett*, 256 Mass. 397, 402. *Emerson* v. *Deming*, 304 Mass. 478, 483. We are unable to say from a review of the testimony that the judge was plainly wrong in his conclusion that the check was not in fact received as payment.

3. The plaintiff next argues that even if the check was not received as payment, the defendants were obligated to present the check properly to revive the underlying obligation. While we agree with the plaintiff's premise, we are of opinion that the defendants properly presented the check, not once, but twice, that on both occasions certification was refused, and that therefore the defendants were justified in refusing to perform.

General Laws c. 106, § 3–411 (1) (Uniform Commercial
Code), provides in relevant part: "Certification of a check
is acceptance." Section 3–504 (1) of the same chapter pro-
vides: "*Presentment is a demand for acceptance* or payment
made upon the maker, acceptor, drawee or other payor by
or on behalf of the holder" (emphasis supplied). The plain-
tiff's argument that the check was not properly indorsed
and the trust instrument was not presented is answered by
comment 1 to § 3–505 of the Uniform Commercial Code,
2 U. L. A. (Master Ed.). Section 3–505 prescribes what the
party to whom presentment is made *may* require without
dishonor. Comment 1 to that section reads: "In the first
instance a mere demand for acceptance or payment is suffi-
cient presentment, and if the payment is unqualifiedly re-
fused nothing more is required. The party to whom pre-
sentment is made may, however, require exhibition of the
instrument, its production at the proper place, identifica-
tion of the party making presentment and a signed receipt
on the instrument, or its surrender on full payment."

The defendants demanded certification of the check.
Since no additional requirements were made by the bank,
its refusal to certify renders moot the question whether
such other requirements would have been met by the de-
fendants. Further, the executive vice-president of the
Coolidge Bank testified that under no circumstance would
the check have been certified prior to the expiration of five
banking days following the deposit of the checks in the
Gallinaro account. Another vice-president of the Coolidge
Bank also testified that it would have made no difference
whether the check was presented for certification or collec-
tion; in neither case would it have been honored before the
expiration of five banking days. We are, of course, aware
that a bank is under no obligation to certify a check.
§ 3–411 (2). In this case, however, there was evidence that
the bank would have certified the check in question but for
the "uncollected funds."

4. The plaintiff contends further that he was entitled to
rely upon the defendants' warranty that there was no clause

restricting alienation in their mortgage. Even if we agreed with the plaintiff's contention, we are of opinion that in fact there was no reliance here. The judge found that Gallinaro was not justified in relying on the alienation warranty. This finding is amply supported by the evidence. There was testimony by the plaintiff that when he signed the agreement he did not know "anything about [the alienation clause].". Further, after the deal had been called off by the defendants, he procured alternative financing on his own. Thus, we are of opinion that he was neither induced to rely on the misrepresentation by the defendants nor did he ever rely to his detriment on this misrepresentation. Moreover, since, as we hold, the defendants were excused from performance because of an independent breach by the plaintiff, this issue becomes academic.

. 5. The final question is whether the trial judge erred in awarding counsel fees in the sum of $2,000 to the defendants. In exceptional cases, e.g., *Wheeler* v. *Hanson,* 161 Mass. 370, of which this is not one, counsel fees have been awarded. But, as we observed in *Chartrand* v. *Riley,* 354 Mass. 242, 244–245, the trend in more recent decisions has been to deny awards of counsel fees. The case at bar is governed by the *Chartrand* case which contains a full discussion of the subject. Further discussion would be redundant.

The final decree is to be modified by striking out the award of counsel fees. As so modified, it is affirmed.

*So ordered.*