TERESA PAPALE *vs.* WESTBORO COUNTRY CLUB, INC.
& another.[1]

Worcester.   April 18, 1974. — May 28, 1974.

Present: ROSE, GOODMAN, & GRANT, JJ.

*Equity Pleading and Practice,* Appeal.   *Easement.   Equity Juris-
diction,* Specific performance.

In the circumstances, where no action was taken under Rule 76 of the
Superior Court to designate a stenographer to report the evidence
at a hearing by a judge on damages in a suit in equity, although
the hearing appeared to have been taken stenographically, the
transcript and exhibits at the hearing were not before this court on
an appeal from so much of the final decree as related to damages;
and, in the absence of any finding by the judge other than the
finding of the amount of damages in the final decree, there was
no basis for consideration of the appeal and it must be dismissed.
[314-316]
Rulings of law by a master in a suit in equity were disregarded by
this court on appeal.   [316]
In a suit in equity by the owner of a parcel of land on a highway to
enjoin trespasses over a road on that parcel by persons connected
with defendants asserting in equity an easement of travel over the
road between the highway and a parcel of land of the defendants
abutting the rear of the plaintiff's parcel, where the defense was
based on a claim of right to specific performance of a contract
between predecessors of the parties whereby the defendants' prede-
cessors were to construct the road in a manner suitable for muni-
cipal acceptance as a public way and in conformity to additional

---

[1] W. N. Social Club, Inc., described in the pleadings as a
"charitable organization . . . located on the . . . premises of" the first
named defendant but not otherwise identified in any part of the
record.

requirements as to the width of clearing and grading and were also to furnish a performance bond, and the plaintiff's predecessor was to grant such easement of travel, but it appeared that the easement never was granted and that, although the plaintiff's predecessor had contemplated house lots on both sides of the road, it was not constructed in accordance with either the municipal or the additional requirements and the performance bond was not furnished, it was held that specific performance of the promise of the plaintiff's predecessor to grant the easement could not have been enforced against him, that the defendants failed to establish their defense, and that a decree in favor of the plaintiff was proper. [316-320]

BILL IN EQUITY filed in the Superior Court on December 10, 1970.

The suit was heard on a master's report, and for assessment of damages, by *Beaudreau*, J.

*John M. Mullen* for the defendants.

*Joseph J. Hurley* for the plaintiff.

GRANT, J. The plaintiff seeks by this bill in equity to enjoin further trespasses by the defendant corporations and their members and guests over a certain strip of land which comprises a portion of a parcel of some thirty-nine acres owned by the plaintiff and lying on the northerly side of the Boston-Worcester Turnpike (Route 9) in Westborough. The bill also prays for an assessment of the plaintiff's damages arising out of past trespasses. The answer denies a trespass and asserts that the defendants have an easement over the strip as a means of access to and egress from their adjoining land, which lies to the rear and northerly of that owned by the plaintiff. The matter was referred to a master under Rule 86 of the Superior Court, as amended effective June 1, 1970. The master filed a report to which three exhibits were specifically annexed; he did not report any other evidence; no objections were appended to the report. The plaintiff and the defendants moved separately for the entry of an interlocutory decree confirming the master's report. The motion of the defendants was that the report be confirmed only with respect to the findings of

fact contained therein, disregarding certain specifically identified portions which were alleged to constitute rulings of law made by the master. An interlocutory decree was entered which simply confirmed the report, without referring to possible rulings of law which might be found therein. The defendants appealed from that decree.

As agreed by the parties, the question of the plaintiff's damages (if any) was reserved for determination by the court. The judge held a hearing which appears to have been taken stenographically. However, there is nothing in the record or in the docket entries to disclose that the trial judge was requested to or did act under the provisions of Rule 76 of the Superior Court (as amended effective January 1, 1958) to designate a stenographer to report the evidence for the purposes of G. L. c. 214, § 24 (as amended by St. 1947, c. 365, § 1). Following the hearing the judge entered a final decree which enjoins the defendants, their members, and their guests from using the strip of land in question and assesses damages in favor of the plaintiff. The defendants appealed from that decree; the plaintiff appealed from so much thereof as relates to the amount of damages. The judge was not requested to make a report of the material facts found by him (G. L. c. 214, § 23, as amended through St. 1947, c. 365, § 2), and he made no finding except the one as to the amount of the plaintiff's damages which appears in the final decree. Some seven months after the entry of that decree the judge purported to allow a motion to transmit the originals of unidentified exhibits to this court. See Rule 1:06 of the Appeals Court, 1 Mass. App. Ct. 886 (1972).

We have set out the proceedings at length so as to enable us to define the scope of review open on these appeals, which is considerably narrower than that supposed by the parties in their briefs. In the circumstances described, neither the transcript of the hearing before the judge nor any of the exhibits offered or re-

ceived at that hearing are before us. *Flynn* v. *Brassard,*
1 Mass. App. Ct. 678, 679-681 (1974), and cases cited.
That being so, and the judge having made no subsidiary
findings of fact, there is no basis for considering the
plaintiff's contention that the damages awarded were
inadequate; her appeal from the final decree will,
therefore, be dismissed.  The master not having been
required or ordered to report any evidence, none of the
exhibits offered or received in evidence before him
(except those specifically annexed to his report; see *Dodge*
v. *Inspector of Bldgs. of Newburyport,* 340 Mass. 382,
386 [1960]) is before us.  "We are bound by the master's
subsidiary findings of fact unless they are plainly wrong
or mutually inconsistent, and we must determine only
whether the final decree is supported by those facts found
by the master and proper inferences therefrom." *Marine
Contractors Co. Inc.* v. *Hurley,* 365 Mass. 280, 282
(1974).  As we are bound to disregard the rulings of law
made by the master in his report (*O'Brien* v. *Dwight,*
363 Mass. 256, 282 [1973]), we need not give specific
consideration to the defendants' appeal from the inter-
locutory decree confirming that report; no other point is
raised by that appeal.  Having cleared the procedural
undergrowth, we summarize the material facts found by
the master.

In 1959 one Papale, a building contractor engaged in
residential real estate development, was the owner of a
parcel of some forty-one acres of vacant land lying on the
northerly side of Route 9 in Westborough.  In that year
the land north of Papale's property, which had no access
to Route 9, was purchased by two individuals named
DiCicco and Tomaiolo for the purpose of constructing
and operating a golf club.  DiCicco and Tomaiolo, being
desirous of securing access from their property to Route 9
for use by the members and guests of the proposed club,
opened negotiations with Papale looking toward the
establishment of a passageway over his land.  An oral
agreement was reached in late 1960 which was reduced

to a writing dated January 11, 1961, by which time DiCicco and Tomaiolo had conveyed their land to what may have been the corporate predecessor of the defendant Westboro Country Club, Inc. (Club). The written agreement was, however, executed by Papale as party of the first part and by DiCicco and Tomaiolo as party of the second part. We do not know whether DiCicco and Tomaiolo ever assigned their rights under the agreement to Club (or its predecessor).

The agreement recites that "in consideration of the mutual promises herein" Papale "agrees to grant an easement and right of way for access and egress" to DiCicco and Tomaiolo northerly from Route 9 over Papale's land "in accordance with a [p]lan hereto attached." DiCicco and Tomaiolo agreed "to construct a street as shown on said [p]lan, [p]rofile, and [c]ross-section being hereto attached." All construction was to "be in conformance with said [p]lan, [p]rofile and [c]ross-section and . . . conform to" stated requirements, which included the clearing of a fifty foot wide strip of all stumps, brush, roots, and boulders (par. 4), the bringing of the entire fifty foot width of the roadway to a finished grade shown on the profile on the attached plan (par. 6), and the furnishing by DiCicco and Tomaiolo to Papale of a performance bond (par. 15). The plan discloses that it was Papale's intention to lay out house lots on either side of the roadway. The agreement required that both the road and a water main which was to be installed therein were to be constructed to the specifications and in accordance with the regulations of various departments and boards of the town of Westborough (town), including its planning board, so that the road could be accepted as a town way and housing could be commenced on either side thereof. If the road should be accepted by the town, the parties were to convey their respective rights in the road to the town for a nominal sum. A petition for such acceptance was to be filed within a "reasonable time," but by whom is not stated.

If the town should "[refuse] to accept the . . . road . . . within a reasonable time after the filing of the petition," DiCicco and Tomaiolo were to have an "option to purchase the land burdened by said right of way upon the payment of" a stated sum.[2]  They were to bear the expense of all work and to assume all betterments which might be assessed by the town.

Club or one of its predecessors thereafter caused a road to be built "according to the [p]lan" attached to the agreement, with a water main laid in the road.  "[T]he road was not constructed in accordance with the specifications of the [t]own . . . for public roads," nor was it "constructed according to the provisions of the" 1961 agreement.  "The road was not cleared for the whole fifty foot width as required in paragraph 4.  The road was not filled to a grade equal to center line as required under paragraph 6.[3] . . . No bond was furnished to Papale as required by paragraph 15."  No petition for the acceptance of the road as a public way was filed by the defendants with any board or officer of the town; we do not know whether any such petition was filed by Papale or anyone else.  The road has not been accepted by the town; there was an "informal refusal" to accept the road.

Papale died in 1963.  The plaintiff (his widow) succeeded to his interest in the land which he had owned at the time of the 1961 agreement, and still owns most of it.  There is "no known record of any deed or recorded instrument conveying any easement or interest by . . .

---

[2] We are not concerned with the existence of the option except as it helps portray the overall intentions of the parties to the agreement. The defendants have not challenged the master's findings that the option was not exercised and was allowed to expire, inferably because the holder of the option did not have the necessary amount of money.

[3] We construe the quoted findings to mean that the road was built in the location shown on the plan attached to the agreement but not in accordance with the specific provisions of the agreement.

Papale or . . . [the plaintiff] to" DiCicco and Tomaiolo or to the defendants. The members and guests of the defendants have made continuous use of the road since its completion. No payment or other compensation for such use has ever been made or given by the defendants to Papale or the plaintiff. The bill in this case was filed in late 1970, following repeated refusals by DiCicco to pay for the land on which the road is located or for the use of the road.

The sole defence to the bill is that there has been no trespass on the plaintiff's property because the 1961 agreement gave DiCicco and Tomaiolo a specifically enforceable right in equity to require from Papale a deed of an easement of access and egress over the strip in question as soon as the roadway was constructed and that the defendants should now be regarded as possessing such an easement. See *Baseball Publishing Co.* v. *Bruton,* 302 Mass. 54, 58 (1938). Passing the point that none of the parties to this suit was a party to the 1961 agreement,[4] the difficulty with the defendants' position is that it overlooks the master's findings as to the respects in which the builder of the road failed to comply with the express requirements of the agreement concerning the manner in which the road was to be constructed.

Papale was a building contractor and residential real estate developer who intended to lay out house lots on both sides of the road when it should be completed. The regulations of the town's planning board were specifically adverted to in the agreement. The importance of building the road to the town's specifications for the acceptance of a road as a public way was or should have been obvious to DiCicco and Tomaiolo. The clearing of a strip fifty feet wide (par. 4) and the bringing of the entire width of the roadway up to a particular grade (par. 6) appear to have been requirements additional

---

[4] This point was expressly waived by counsel for the plaintiff at oral argument.

to those of the town. There is nothing in the record which would permit us to say that the failure to meet either requirement was immaterial[5] or unintentional. Indeed, the facts found by the master are such that if the agreement had been one under which Papale had contracted to pay for the construction of the road (as opposed to granting an easement for its use), recovery would have been denied DiCicco and Tomaiolo, both on the express contract and on a quantum meruit. See *Hayeck Bldg. & Realty Co. Inc.* v. *Turcotte,* 361 Mass. 785, 789-790 (1972), and cases cited. Nor are we in a position to brand as immaterial the requirement of supplying a performance bond (par. 15).

We conclude that this is not a case in which Papale could have been required specifically to perform his promise to grant an easement over the strip in question. Compare *Strumskis* v. *Tilenas,* 268 Mass. 550, 553 (1929); *Breitstein* v. *Blum,* 356 Mass. 730 (1969); *Gallinaro* v. *Fitzpatrick,* 359 Mass. 6, 8-11 (1971). It follows that the defendants have failed to make out a defence to the continuing trespasses found by the master.

Following oral argument the defendants submitted a motion in this court for leave to amend their answer to include an express counterclaim for specific performance of Papale's promise to grant an easement. G. L. c. 231, § 125. G. L. c. 211A, § 10. That motion is denied for reasons already apparent.

The interlocutory decree confirming the master's report is affirmed; the plaintiff's appeal is dismissed; the defendants' motion for leave to amend is denied; the final decree is affirmed, with costs of appeal to the plaintiff.

*So ordered.*

---

[5] To the contrary, the form of final decree proposed by the defendants would have specifically ordered them to remedy both deficiencies in construction.