LESTER P. JONES & another *vs.* BARBARA S. GINGRAS.

Plymouth.    May 14, 1975. — July 29, 1975.

Present: HALE, C.J., ROSE, & KEVILLE, JJ.

*Deed,* Construction.  *Real Property,* Boundary.  *Adverse Possession and Prescription.  Evidence,* Extrinsic affecting writing.  *Equity Pleading and Practice,* Appeal; Exhibits; Master: findings.

Where no appeal was taken from an interlocutory decree confirming a master's report, the parties on an appeal from the final decree could not bring before this court portions of a transcript of the testimony before the master and exhibits introduced in evidence before him. [394-395]

In a suit to determine the location of the boundary between the plaintiffs' and the defendant's land, where it appeared that certain deeds described the boundary as running "from a point on Common Street midway between Tiffany Road and Pine Street . . . to a point on the northern boundary of grantor's land at a point midway between Tiffany Road and Pine Street" and that because of the irregular course of the northern boundary and of Common Street surveyors could not agree on the location of the midpoints, the deeds contained a latent ambiguity in describing the disputed boundary, permitting extrinsic evidence to show the construction given to the deeds by the parties and their predecessors in title. [396-397]

In a bill in equity to quiet title to a parcel of land, evidence that for a period of some twenty years a predecessor in title to the plaintiffs maintained a garden on part of the locus, had mowed grass, cleared

the land and dug ditches on another part of it and that the defendant's grandfather had agreed with the plaintiffs' predecessor in title that the disputed boundary was located where the plaintiffs' now claimed it was warranted a finding that the plaintiffs had record title to the locus [397-398]; even if the plaintiffs did not have record title to the locus, the evidence supported the alternative finding that the plaintiffs owned it by adverse possession [398-399].

BILL IN EQUITY filed in the Superior Court on February 12, 1973.

The suit was heard by *Chmielinski, J.,* on a master's report.

The case was submitted on briefs.

*Nachman S. Cohen* for the defendant.

*Sidney Gorovitz* for the plaintiffs.

KEVILLE, J.    This is a bill in equity to quiet title to land in Norwell (the locus). The case was referred to a master who found that the plaintiffs, husband and wife, had record title to the locus and, alternatively, that they had established ownership of the locus by adverse possession. The court below confirmed the master's report, and a final decree was entered stating that the plaintiffs have "good title of record" to the locus. The defendant appealed from the final decree only.[1]

We first dispose of certain procedural questions. The parties have attempted to bring before us portions of a transcript of the testimony before the master (taken by stenographers approved by him) as well as some of the exhibits introduced in evidence before him. The record is silent as to whether the order of reference to the master authorized him to report evidence. Compare *Joyner* v. *Lenox Sav. Bank,* 322 Mass. 46, 57-58 (1947); *Royal Tool & Gauge Corp.* v. *Clerk of the Courts for the County of Hampden,* 326 Mass. 390, 391 (1950); *Peabody Constr. Co. Inc.* v. *First Fed. Parking Corp. post,* 768 (1975). In any event, because no appeal was taken from the interlocutory decree confirming the master's report, the master's sub-

---

[1] The appeal was taken on June 21, 1974. See Mass.R.Civ.P. 1A, subpar. 7. Gene Gingras, who was also a defendant, has not appealed.

sidiary findings of fact are conclusive between the parties
(*Tucker* v. *Poch,* 321 Mass. 321, 322 [1947]; *New England
Overall Co. Inc.* v. *Woltmann,* 343 Mass. 69, 80-81 [1961];
*Erickson* v. *Waltham,* 2 Mass. App. Ct. 436, 438 [1974])
and we are to decide the case solely upon those findings.
See *Fisher* v. *MacDonald,* 332 Mass. 727, 729 (1955) in
which the court, absent an appeal from an interlocutory
decree confirming a master's report, refused to consider
summaries of evidence filed by a master. Certain of the
exhibits which the parties attempt to bring before us are
referred to by the master in his report. These exhibits are
not, however, part of his findings because he did not ex-
pressly incorporate them by reference, nor is there any
indication that they were physically appended to his report.
See *Dodge* v. *Inspector of Bldgs. of Newburyport,* 340
Mass. 382, 386 (1960) in which the original record dis-
closes that the auditor had similarly referred to certain
exhibits. Contrast *Papale* v. *Westboro Country Club, Inc.*
2 Mass. App. Ct. 313, 314 (1974).

In these circumstances, the only questions presented are
whether the master's subsidiary findings are mutually in-
consistent or plainly wrong (*John P. Condon Corp.* v. *State
Line Contractors, Inc.* 353 Mass. 137, 139 [1967]; *Marine
Contractors Co. Inc.* v. *Hurley,* 365 Mass. 280, 282 [1974])
and whether the decree is within the scope of the pleadings
and supported by those findings. *Lukas* v. *Leventhal,* 344
Mass. 762 (1962). *Madigan* v. *McCann,* 346 Mass. 62, 64
(1963). *Marine Contractors Co. Inc.* v. *Hurley, supra.* See
also *Foot* v. *Bauman,* 333 Mass. 214, 219 (1955); *Limoli*
v. *Accettullo,* 358 Mass. 381, 382 (1970). Although the
master did not state whether his "general findings of fact"
were based solely upon his "subsidiary" findings, he re-
ported his subsidiary findings in such detail that it is rea-
sonable to assume that they are all of the findings on which
his general findings are based. *Deyo* v. *Athol Housing
Authy.* 335 Mass. 459, 463 (1959). *Larson* v. *Brockton
Agricultural Soc.* 344 Mass. 463, 465 (1962). *Cohen* v.
*Garelick,* 344 Mass. 654, 659 (1962). It is, therefore, the
duty of this court to draw its own inferences and reach its

own conclusions from the master's subsidiary findings. *Corrigan* v. *O'Brien,* 353 Mass. 341, 345-346 (1967). *Certified Pest Control Co. Inc.* v. *Kuiper,* 1 Mass. App. Ct. 201, 204 (1973). *Erickson* v. *Waltham,* 2 Mass. App. Ct. 436, 438 (1974).

The plaintiffs and the defendant own adjoining parcels of land; they dispute the location of the boundary between their properties. Both the plaintiffs and the defendant trace their titles back to a remote common grantor (Hughes) who, the master found, had title to "about 17 acres on the northerly side of Common Street" bounded on the west by Tiffany Road and on the east by Pine Street (later Leonard Lane). In 1928 Hughes conveyed "the westerly one-half of [the] 17 acres" by a deed which described the boundary now in dispute as "a line running from a point on Common Street · midway between Tiffany Road and Pine Street running northerly to a point on the northern boundary of grantor's land at a point midway between Tiffany Road and Pine Street on said boundary." This property has passed to the defendant by a subsequent deed (which used substantially similar language to describe the disputed boundary) and by devise.

In 1931 the Rockland Trust Company acquired the remainder of the parcel from Hughes; in 1932 that company conveyed this property by a deed characterizing it as "8½ acres of land" and describing the disputed boundary as running from "a stake [on Common Street] midway between Pine Street and Tiffany Road; thence northerly to a point on the northerly boundary of land formerly of . . . Hughes at a point midway between Tiffany Road and Pine Street." There were two further conveyances of this property (both similarly describing the disputed boundary) prior to its subdivision, apparently in the early nineteen sixties.

In 1965 the southwesterly portion of the eastern tract was conveyed by a deed which described the boundaries of the lot by reference to a subdivision plan (the Bailey plan). A 1972 deed conveyed this lot (with an increase not here material) to the plaintiffs; this deed referred to another

plan (the Feldman plan) showing the disputed boundary in the same place the earlier plan did. All the deeds have been duly recorded.

In 1971 the defendant, after seeing a for sale sign on the locus, hired a surveyor to survey her property; the resulting Jacobs plan showed the disputed boundary to be between forty feet (at its northern terminus) and seventy feet (at its southern terminus) east of its location in the two subdivision plans referred to in the plaintiffs' chain of title. However, the master specifically found that those who made the Jacobs plan, like those who made the Bailey and Feldman plans, were unable to locate the point on the northern boundary of the original Hughes parcel midway between Tiffany Road and Pine Street — the point referred to in the early deeds as the northerly terminus of the disputed boundary. Apparently because of the irregular course of the northern boundary, no surveyor could calculate a midpoint which was located on the Hughes parcel.[2] A latent ambiguity in the descriptions of the disputed boundary contained in the various early deeds thus arose, and this ambiguity permits the use of extrinsic evidence to show the construction given to the deeds by the parties and their predecessors in title as manifested by their acts. *Coyle* v. *Cleary,* 116 Mass. 208, 209-210 (1874). *Graves* v. *Broughton,* 185 Mass. 174, 175-176 (1904). *Douglas* v. *Harty,* 343 Mass. 775 (1961), and material cited. *Ryan* v. *Stavros,* 348 Mass. 251, 260 (1964). Contrast *Iverson* v. *Swan,* 169 Mass. 582, 583 (1897); *Crawford* v. *Roloson,* 256 Mass. 331, 336 (1926). Such acts of adjoining land owners are given "great weight." *Fulgenitti* v. *Cariddi,* 292 Mass. 321, 324-325 (1935).

The extrinsic evidence introduced amply supported the

---

[2] The Feldman plan, which is annexed to the plaintiffs' bill, reveals that the eastern end of Common Street has a somewhat irregular course which would make difficult the calculation of a point on it midway between Tiffany Road and Pine Street; indeed the various surveyors were unable to agree on such a midpoint and the master appears to have been unable to resolve the question of exactly where this midpoint was.

master's ultimate finding that the plaintiffs had record title to the locus. From the early nineteen forties to the early sixties, a predecessor in title of the plaintiffs maintained a vegetable garden located partially on the disputed portion of the locus and within twenty-five to thirty feet of Common Street. On the disputed portion of the locus to the rear of this garden, he mowed the grass, removed small trees, planted blueberry bushes, sprayed against gypsy moths, and dug ditches to prevent spring flooding. In the mid-sixties another predecessor in title continued to maintain the garden; to the rear of the garden he built a corral whose fence ran along the boundary claimed by the plaintiffs, and he mowed the grass between the garden and Common Street.

Although the defendant's grandfather (from whom she inherited her property) grew vegetables in the garden maintained by the plaintiffs' predecessors in title and although the defendant as a child picked blueberries and played on the disputed portion of the locus, there is no question that the plaintiffs' predecessors in title used the disputed portion of the locus under claim of title. Contrast *Ryan* v. *Stavros*, 348 Mass. 251, 261 (1964). In the nineteen forties the defendant's grandfather agreed with a predecessor in title of the plaintiffs that the disputed boundary was approximately where the plaintiffs now claim it is. In 1965, at a time when the plaintiffs' version of the boundary was clearly marked by stakes, the defendant indicated an interest in buying the locus without asserting that she already owned a portion of it; the sale fell through either because she was unable to raise the necessary money or because a sale price could not be agreed upon. Since 1941 the plaintiffs and their predecessors in title have paid all real estate taxes assessed on the locus.

Finally, were we to assume that the plaintiffs did not have record title to the disputed portion of the locus, the facts summarized support the master's alternative finding that they owned it by adverse possession. *Lyon* v. *Parkinson*, 330 Mass. 374, 379-380 (1953). *Kershaw* v. *Zecchini*,

342 Mass. 318, 319-321 (1961). *Collins* v. *Cabral,* 348 Mass. 797 (1965). Contrast *Cowden* v. *Cutting,* 339 Mass. 164, 167-169 (1959).

*Final decree affirmed.*