ANNIE SORACCO *vs.* AGRICULTURAL INSURANCE COMPANY.

SAME *vs.* THE CONTINENTAL INSURANCE COMPANY.

Suffolk.   December 6, 1935. — January 28, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Insurance,* Fire.

In an action on a policy insuring a house against fire "while occupied for dwelling purposes only," the jury could find that the house was so used at the time of a fire, on evidence that it had been let as a dwelling a short time before, though at the time of the fire the tenant was temporarily absent, and there then were in the cellar parts of apparatus designed for distilling alcohol, but without evidence that the parts ever had been assembled or put to any business use.

TWO ACTIONS OF CONTRACT. Writs dated August 6, 1931.

The actions were tried in the Superior Court before *Cox,* J. In each action there was a verdict for the plaintiff in the sum of $4,861. The defendants alleged exceptions.

*W. L. Came,* for the defendants.

*D. J. Gallagher,* for the plaintiff.

PIERCE, J. These are two actions on two contracts of fire insurance, each based on a three-year policy dated May 31, 1927, in the standard form set forth in G. L. c. 175, § 99, with additions made in the manner prescribed in the ninth clause of said section, whereby the respective defendants did each "insure Annie Soracco and her legal representatives against loss or damage by fire to the amount of five thousand dollars on the frame building, and additions, with non combustible roof covering, including foundations and all permanent fixtures thereto, while therein or thereon as a part of the building, while occupied for dwelling purposes only and designed for occupancy by not more than

two families, and having no tile or metal chimney, situated on westerly side of Park Avenue, Dedham, Mass." It is not disputed that the property in question was covered by the policies, that the premiums had been paid or that the fire resulted in total loss. Nor is it disputed that the plaintiff is entitled to recover, if at all, the amount of the verdict returned against each defendant.

At the conclusion of the testimony given at the trial each defendant moved in writing that the jury be instructed by the judge to return a verdict in its favor. Each defendant also made a written request that the judge rule that upon all the evidence the plaintiff could not recover. The bill of exceptions states: "Each defendant is aggrieved at the refusal of the court to allow its motion for a directed verdict and to rule that the plaintiff could not recover because, and only because, there was no evidence, so it contends, to warrant the jury in finding that at the time of the loss the insurance was in force, or, to state it in another form, to warrant the jury in finding that the loss occurred while the occupancy of the building in question was for dwelling purposes *only*, and, because, so each defendant contends, there was positive, uncontradicted and unassailable proof that the occupancy at the time of the fire was in part, at least, for a purpose entirely foreign to dwelling."

On these subjects the only material testimony was, in substance, as follows: The plaintiff bought the property in 1924 and afterwards converted it from a single dwelling into a two-family house. One Bracconni was a tenant of the first floor from the summer of 1925 to February, 1930. Prior to February, 1930, the upstairs apartment had been empty for about two months. In January, 1930, one Bruno hired the upstairs apartment and moved in during February, 1930. In February Bruno's father-in-law and mother-in-law moved into the downstairs apartment. After the tenants of these apartments moved in, the plaintiff went to the property once in a while, the last time being about two weeks before the fire, which occurred on March 22, 1930. On the occasion of her last visit "She could see in the window there was somebody inside and there were

clothes [washing] hung upstairs and also downstairs." The cellar of this property was divided into two parts by a board wall running crosswise, the portion allotted to the downstairs apartment being in the back part of the house and the cellar of the upstairs tenement in the front part of the house.

At the trial the plaintiff testified, in substance, that "she did not know where Bruno now is. She had made inquiries but nobody seemed to know. She started making inquiries shortly after the fire and asked people to make inquiries for her. Nobody knew where he disappeared to"; that "If the building was used for manufacturing liquors, she didn't know anything about it. Neither did she know manufacturing, distilling or brewing, or anything else of that sort was going on. She neither saw nor heard anything before the fire that led her even to suspect there was anything of the sort." The former tenant of the first floor apartment, Bracconni, testified that during the time he lived in the house, that is, from August 15, 1925, until February 14, 1930, he saw no still or anything to show that liquor was being made there; that "He himself did not make any there," and "As long as he lived there he did not see anybody make or have any liquor on his premises." The plaintiff rested at the close of her testimony.

The defendants introduced testimony, in substance, as follows: "After the fire had burned out and down" the chief of the fire department saw a large tank in the cellar which gave out an odor something like that of hair oil. This tank in dimension was about five by three feet and was "a little over half full" of a liquid, "estimated to be a toilet preparation" "before being passed over and condensed," which contained about twenty per cent of alcohol by volume. There were in the cellar near the tank, which had a capacity of "about eight hundred gallons," four or five hundred one-gallon rectangular cans with screw tops; of these seventeen were full of alcohol, one was partly full of something else, and the rest were empty. There was further testimony to the effect that after the fire there were different sections of copper columns lying around the floor;

that these columns were cylindrical in shape containing a baffle plate, composed of six sections, each not less than two and one half feet nor more than four feet in height; that in operation they would be placed on the top surface of the still, one on top of the other; that a still of six hundred gallons' capacity of a boiler type, round, cylindrical, would be five to five and one half feet tall and probably about four feet wide, and when mounted the columns or sections of a column would stand at least eighteen feet above the still; and that the tank surmounted by the columns would stand twenty-three feet in height and would have to stand so, if used for distillation. There was also in the cellar a small heater which was of the type of hot water or steam heater usually found in the ordinary house, and there was no testimony to the effect that this heater or any smaller heater was connected with the tank or "still." There was testimony to the effect that besides the columns and the boiler or tank a heater would be necessary if the apparatus was being used for the purposes of distillation. It appeared in the testimony of Bracconni when recalled by the defendants that the cellar was about six feet six inches high. It is evident that it was impossible to set up such a device as the testimony for the defendants described without making openings in the first and second floors for such structure, and there is no evidence in the record to show that there were openings in either the first or the second floor. For the defendants there was testimony to the effect that no one was living on the premises at the time of the fire and that lights were seen in the building every night including the night of the fire.

Upon all the testimony considered in its aspect most favorable to the plaintiff the jury would have been warranted in finding that the house was occupied, and was occupied for dwelling purposes only. We agree with the defendants that it was immaterial that the tenant was temporarily absent, *Avila* v. *DuPont*, 278 Mass. 83, *Herrman* v. *Adriatic Fire Ins. Co.* 85 N. Y. 162, 169, provided the character of the occupancy was use or possession for dwelling house purposes only. It is true the testimony for

the defendants warranted a finding that there were in the cellar of the insured permises parts of an apparatus which, set up, would be adapted to the distillation of alcohol; but the whole testimony was consistent with the occupancy of the premises and with an abandonment of any purpose to use the parts and cans of alcohol by any tenant of the premises.    The motions and the requests to rule on all the evidence were denied rightly.    The case was submitted to the jury with instructions, not excepted to, which fully covered the issue whether or not "this house was used for dwelling purposes only."

The exceptions saved to the denial of motions for new trial are not argued and are deemed to be waived.

*Exceptions overruled.*