THE FIRST NATIONAL BANK OF BOSTON & another,
executors, *vs.* CAROL A. KONNER.

Barnstable.    April 7, 1977. — October 3, 1977.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & ABRAMS, JJ.

*Real Property,* Profit à prendre.    *Profit à Prendre,* Abandonment.

The rights of a holder of a profit à prendre were not extinguished
merely by nonuser where there was no evidence that the holder had
the requisite intent to abandon the profit.  [466-467]
A profit à prendre which had been created for the purpose of taking
sand for a cranberry bog was not extinguished by the mere fact that
there existed practical impediments to successful reclamation of the
bog, particularly where the owner of the dominant estate had con-
trol over the conditions currently preventing the exercise of the
profit.  [467-468]
This court declined to adopt a rule that a profit à prendre created for
a special purpose is extinguished when it would be commercially
impractical or economically wasteful to attempt to revive the ac-
tivity which the profit was created to serve.  [468-470]
In the absence of an express limitation imposed by the grantor on the
exercise of a profit à prendre, the owner of the dominant estate was
free to exercise her rights without geographical limitations.  [470-471]

PETITION filed in the Land Court on May 10, 1974.
The case was heard by *Fenton, J.*
The Supreme Judicial Court granted a request for direct
appellate review.
*Richard W. Renehan (Dunbar Holmes* with him) for
the plaintiffs.
*Richard M. Zinner* for the defendant.

QUIRICO, J.    This is an action for declaratory relief un-
der G. L. c. 231A which was entered in the Land Court by
The First National Bank of Boston and Donald T. Devine,
executors under the will of Frank F. Savage, against Carol

A. Konner (Konner).[1] The plaintiffs allege that the Savage estate and Konner own adjoining parcels of land in Mashpee, and that an actual controversy has arisen over the existence, nature and extent of the rights of Konner in the adjoining land of the Savage estate (Savage property). They ask for a determination of the rights of the parties in the matter in controversy.

After a trial, a judge of the Land Court, in a carefully prepared decision, concluded that Konner is the holder of a profit à prendre which gives her the perpetual right to take sand from the Savage property for the limited purpose of sanding a cranberry bog, that the profit à prendre is appurtenant to that portion of Konner's land shown as Parcel 3 on a plan dated July 2, 1968, and recorded in the Barnstable County registry of deeds in plan book 224 at page 47,[2] and that the profit à prendre is not limited to any specific or defined portion of the thirty-three acres of the Savage property. He further concluded, contrary to the contentions of the plaintiffs, that the sanding rights had not been lost by abandonment or terminated under any other theory of extinguishment. Judgment was entered accordingly and the plaintiffs appealed.

Because this case presents novel questions concerning the extinction of a profit à prendre, we granted an application for direct appellate review. For reasons set forth below, we conclude that there was no error and affirm the judgment of the Land Court.

We summarize the pertinent facts as found by the judge of the Land Court. Such findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Mass. R. Civ. P. 52 (a), 365 Mass. 816 (1974). The Savage estate includes a parcel of thirty-three acres of land in Mashpee. Konner's land ad-

---

[1] Originally there were two additional defendants, John L. Warner and Zoe F. Warner, who were mortgagees of the Konner property, but their mortgage was discharged and by stipulation they are no longer parties to this action.

[2] The plan is reproduced as an appendix to this opinion.

joins that land and it consists of the following three parcels which are shown on the plan appended to this opinion: Parcel 1 consisting of 3.33 acres, Parcel 2 consisting of 0.78 acres, and Parcel 3 consisting of 17.19 acres. Parcel 3, to which the profit à prendre is appurtenant, is separated from the Savage property by Parcel 1.

The land involved in this controversy was formerly owned by Elijah W. Pocknett. In 1885, he conveyed Parcel 3 to Konner's predecessor in title, retaining Parcel 1 and the present Savage property. The deed to Parcel 3, which was described as "Cedar Swamp," granted "the privilege to take sand from my land adjoining to sand the swamp for a Cranberry Bog, and also the right to deposit on my land the stumps and other rubbish coming from the swamp and reserving to myself the Cedar which is to be deposited on my land. Also the right of the parties to a cartway from the town road to the Westerly end of the ... swamp over my land. Also the right of the parties to take sand from my land adjoining to construct a dyke."

Title to Parcel 1 was conveyed to Konner's immediate predecessors in title by Savage in 1968. Konner acquired both Parcel 1 and Parcel 3 in 1971. Her deed to the latter parcel, like the deeds to several of her predecessors in title, refers to the sanding rights in language the same or similar to that used in the 1885 deed.

It appears, both from the language of the Pocknett deed and from statements in the briefs of the parties, that Parcel 3 was virgin swampland when the sanding rights were created. At some undetermined time thereafter, a portion of the land was converted to a bog and used for the cultivation of cranberries; however, it has not been used for that purpose since approximately 1944. At present it is not suitable for growing cranberries. The land is overgrown with bushes, the floodwall or dike is in a state of disrepair, and there are no working floodgates or flumes. Saltwater from Ockway Bay flows onto the property, and the topsoil is contaminated with salt.

Although the cost would be considerable, a bog could be reestablished on Parcel 3. In order to reclaim the bog,

it would be necessary to remove and replace the topsoil, repair the dike, set in flumes and a watergate, and clean the ditches. Cranberry vines would then have to be set in and a layer of sand placed around them. The fine beach sand found on Parcel 1 and the Savage property is not the most suitable for cranberry cultivation on this property but it could be utilized. The cost of reclamation would be approximately $5,000 an acre.

Even if steps are taken to reclaim the bog its operation might not be successful. There is a risk that, in the event of unusual weather conditions, the property will be flooded with salt water. There is also the possibility of saline infusion in the soil through the process of reverse leaching (where the salt rises from the hardpan to the topsoil). Furthermore, Konner may not be able to market the cranberries commercially in the United States in light of a Federal marketing order issued by the Secretary of Agriculture. That order would not prevent her from selling cranberries, however, in a foreign market.

Since purchasing the property in 1971, Konner has taken no steps to make Parcel 3 operational as a cranberry bog. However, she has not excluded cranberry farming as a potential use and, should she so desire, has the financial capacity to reclaim the bog.

The plaintiffs maintain that the sanding rights have been lost by abandonment. Although there are no cases on the subject in this Commonwealth, it is clear that a profit à prendre, like an easement, can be abandoned. *Gerhard* v. *Stephens,* 68 Cal. 2d 864, 882 (1968). Restatement of Property §§ 504, 450, special note (1944). 3 H. Tiffany, Real Property § 847 (3d ed. 1939). In cases dealing with easements, we have held that the rights of a dominant owner will not be extinguished under the theory of abandonment unless there is nonuser coupled with an intent to abandon. Nonuser alone, no matter how long continued, will not suffice. *Desotell* v. *Szczygiel,* 338 Mass. 153, 158-159 (1958). It is also necessary to show "acts by the owner of the dominant estate conclusively and unequivocally manifesting either a present intent to relinquish the ease-

ment or a purpose inconsistent with its further existence. *Willets* v. *Langhaar*, 212 Mass. 573, 575 [1912]." *Dubinsky* v. *Cama*, 261 Mass. 47, 57 (1927).

Applying these principles, the judge of the Land Court ruled that the plaintiffs failed to establish that Konner had the requisite intent to abandon the profit à prendre. The plaintiffs contend that this intent was established by (1) evidence that a series of owners allowed the deterioration of the dikes, flumes, and watergate and the resulting salt water contamination of the bog area and (2) evidence that Konner constructed a pond on Parcel 3 to beautify the locus. We disagree.

We are of the opinion that the failure to repair the dikes and flumes, while some evidence of an intent to abandon, did not conclusively establish it. This is consistent with our decision in *Desotell* v. *Szczygiel*, 338 Mass. 153 (1958), where we held that abandonment of an easement could not be shown merely from nonuser by the dominant owners for many years "coupled with their failure to clear the right of way of its natural cover of trees and brush." *Id.* at 159. The plaintiffs' reliance on *Sindler* v. *William M. Bailey Co.*, 348 Mass. 589 (1965), as setting forth a contrary proposition is misplaced. In that case there was an element of adverse use by the servient owner in addition to nonuser and neglect by the dominant owner. *Id.* at 593.

Nor was the act of constructing the pond sufficient to establish the requisite intent. The pond covered only one acre of the 17.19 acre bog area and thus replaced only a fractional part of the entire acreage available for cranberry growing. It is well settled that "abandonment is not proved by proof of acts which interfere with use of the easement only temporarily, or only in part." 3 R. Powell, Real Property par. 423, at 526.37 (P. Rohan ed. 1977) (footnotes omitted).

The plaintiffs also maintain that the profit à prendre has been extinguished because the limited purpose for which it was created has ceased to exist. The argument is based primarily on our decision in *Makepeace Bros.* v. *Barnstable*, 292 Mass. 518 (1935). There the town of

Barnstable reserved an easement in certain areas of a peninsula known as Sandy Neck for the operation of "try-yards" (areas where whalers boiled or "tried" blubber to extract its oil) and for access thereto. This court upheld the Land Court judge's conclusion that the easement, which was created for the limited purpose of whaling, was extinguished on the disappearance of the whale fishing industry from the vicinity. It was stated, "When a right in the nature of an easement is incapable of being exercised for the purpose for which it is created the right is considered to be extinguished." *Id.* at 525.

In applying that language to this case, the judge of the Land Court analyzed the evidence to determine whether there was a "possibility, given the circumstances of the particular dominant owner, that the [sanding] right may be exercised." He found that there were "practical, scientific, economic and legal impediments to a successful cranberry bog reclamation and growing process." However, he ruled that the evidence did "not establish that it is factually or legally impossible to reclaim the bog or to grow and market cranberries from the bog if reclaimed." He further found and ruled that "it is possible, however unlikely that possibility might be, that the defendant Konner might exercise the sanding rights and that the question of possibility lies chiefly within her control and means." On the basis of these findings and rulings, he concluded "the purpose of the grant, as defined in the Pocknett deed, has not ceased to exist."

We have been asked to determine whether the judge of the Land Court applied the correct legal standards in arriving at his conclusion. We hold that he did.

An interest in the nature of an easement is not terminated when the purpose for which it is created is neither totally nor permanently impossible of enjoyment. There have been cases besides *Makepeace* that have held that an easement was extinguished because it was incapable of being used for the purpose for which it was created. E.g., *Comeau* v. *Manzelli,* 344 Mass. 375, 381 (1962); *Central Wharf & Wet Dock Corp.* v. *Proprietors of India Wharf,*

123 Mass. 567, 570 (1878); *Hancock* v. *Wentworth*, 5 Met. 446, 450-451 (1843). An examination of these cases shows that the possibility of exercise of the granted right, though apparently permanent, might have been merely temporary. These cases, however, are distinguishable from the case at bar. Where this court has held that an easement was extinguished, the circumstances that prevented the exercise of the right to the agreed purpose were beyond the control of the owner of the dominant estate. E.g., *Central Wharf & Wet Dock Corp., supra* at 570. Here, the judge found that they were not. We agree that in this situation it cannot be said that use of the right for the purpose stated is impossible of attainment. Therefore, we conclude that the judge was correct in considering, as a factor bearing on the possibility of exercising the profit in the future for the purpose as limited, whether the owner of the dominant estate had control over the conditions currently preventing such exercise.

The plaintiffs have urged this court to adopt the rule that a profit à prendre created for a special purpose is extinguished when it would be commercially impractical or economically wasteful to attempt to revive the activity which the profit was created to serve. This we decline to do. It would be totally unwarranted to infer that the creator of the sanding right intended a commercially profitable venture to be a condition precedent to either the exercise or continuation of the right. The plaintiffs contend that similar rules have been adopted in other jurisdictions, citing *Gerhard* v. *Stephens*, 68 Cal. 2d 864 (1968), and *Ocean Shore R.R.* v. *Doelger*, 179 Cal. App. 2d 222 (1960). However, these cases merely permit "economic exigencies" to be considered in determining whether there has been an intent to abandon. We need not decide now whether economic factors are proper considerations on the issue of abandonment since that question has not been squarely presented by this appeal. However, were such an issue before us, we would find the following reasoning of the California Supreme Court to be persuasive. "We would be reluctant to assume that an *individual*

abandons his right merely because sound business judgment would call for this action. The intent to abandon is subjective, and we recognize the possibility that personal pride in, and attachment to, property rights may cause an owner to adopt a less functional approach in the management of his possessions." (emphasis in original). 68 Cal. 2d at 895 n.33.

Finally, we consider whether the profit à prendre should have been limited to a specific or defined portion of the servient estate. The plaintiffs contend that the grantor intended the sanding rights to be exercised in an area adjacent to Parcel 3, basically in the area designated as Parcel 1. As noted before, Parcel 1 was retained by Pocknett at the time of the 1885 grant and now belongs to Konner. We find nothing in the deed, however, including the use of the words "my land adjoining," which limits the exercise of the privilege. "The deed in question could have expressly so limited the extent of the privilege, but did not do so." *Gray* v. *Handy*, 349 Mass. 438, 440 (1965).

In the absence of such an intent, the plaintiffs have asked this court to determine the location of the profit à prendre in such a manner as not unnecessarily to burden the servient estate. We are unaware of any precedent for such a limitation. Cases cited by the plaintiffs, in which the parties or the court have fixed the location of undefined easements, in the absence of evidence of the parties' intention, are inapplicable. When the court fixes the location of an easement, it in no way detracts from the extent of the right created. That is not necessarily true where a profit à prendre is at issue.

Although the owner of the dominant estate may exercise her rights without geographical limitations, she does not have unfettered discretion when taking sand from the Savage property. The owners of the servient estate may make any use of their land which is not inconsistent with the exercise of the profit à prendre. See *Butler* v. *Haley Greystone Corp.*, 352 Mass. 252, 258 (1967); *Ampagoomian* v. *Atamian*, 323 Mass. 319, 322 (1948); Restatement of Property § 486 (1944); 3 H. Tiffany, Real Property § 811

(3d ed. 1939). The owner of the dominant estate must recognize this use in its exercise of the profit à prendre. On the facts before us we do not impose any further limitation, geographical or otherwise, on the exercise of the profit by Konner.

We are aware, as was the judge of the Land Court, that the Legislature has seen fit to enact specific provisions relating to the enforcement, denial of enforcement, or termination of certain restrictions on the use of land or construction thereon. G. L. c. 184, §§ 26-30, and c. 240, § 10A. *Blakeley* v. *Gorin*, 365 Mass. 590 (1974). The judge stated in his decision: "Clearly there may be a potential legislative remedy to terminate ancient appurtenant rights such as these that have not been exercised for a long period of time. [Footnote reference to G. L. c. 184, § 30, omitted.] However, there is no statutory mechanism available at this time for such a solution." If we assume that the Legislature has the power to enact similar legislation with reference to rights of the type involved in the present case, on which subject we intimate no opinion since the question is not now before us, the decision whether such legislation would be wise or desirable as a matter of public policy is one to be made by the Legislature rather than by this court.

*Judgment affirmed.*