MCCARTIN LEISURE INDUSTRIES, INC. *vs.* EVERT BAKER
& another.

Suffolk. February 13, 1978. — July 21, 1978.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Real Property,* Profit à prendre. *Profit à Prendre,* Abandonment. *Juris-
diction,* Action to quiet title.

In an action seeking a declaration that the defendant's profit à pren-
dre to remove sand from the plaintiff's land had ceased to exist, the
Superior Court was not divested of jurisdiction of the case by the
fact that title to the servient estate was transferred away from and
then back to the plaintiff during the pendency of the proceedings
where it appeared that the plaintiff held legal title both when the
action was commenced and when the master filed his report and
that during the intervening time, when another held title to the
land, the plaintiff continuously asserted his rightful ownership.
[66–67]
The rights of a holder of a profit à prendre were not extinguished
merely by nonuser where there was no evidence that the holder had
the requisite intent to abandon his right to take sand for a cranber-
ry bog. [67–68]
A profit à prendre which had been created for the purpose of taking
sand for a cranberry bog was not extinguished by the fact that there
existed practical impediments to successful reclamation of the bog
where reclamation was not shown to be either factually or legally
impossible. [68–69]

BILL IN EQUITY filed in the Superior Court on May 8,
1974.

The suit was heard by *Hallisey,* J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*William C. Madden* for the defendants.

*Michael B. Keating*, guardian ad litem for Evert Baker.

*Thomas J. Carens* for the plaintiff.

HENNESSEY, C.J. This is an appeal by one Evert Baker and his legal guardian, Robert E. Baker, from a judgment in the Superior Court, Suffolk County, declaring that Evert Baker's profit à prendre to remove sand from the plaintiff's land has ceased to exist. The case was brought by McCartin Leisure Industries, Inc., in May, 1974, and was referred to a master in September, 1975.

After a hearing, the master found that the sanding rights in question had been granted for the purpose of cultivating cranberries on the land now owned by Evert Baker (Baker). The master concluded that the use of these rights had been abandoned voluntarily by Baker's legal guardians in so far as they had failed selectively over the past nineteen years to repair, maintain, and cultivate a cranberry bog on the dominant estate. The master further concluded that, since cranberry cultivation on Baker's land was economically impossible under modern conditions, standards, and laws, the purpose of Baker's profit à prendre had ceased to exist. For these reasons, the master decided that Baker's sanding rights were extinguished.

Pursuant to motions of the plaintiff and the defendants, respectively, to confirm and to strike the master's report, a judge of the Superior Court rejected the master's conclusion that, by virtue of the guardians' actions with respect to the dominant estate, Baker had shown an intention to abandon his sanding rights in the plaintiff's land. However, the judge agreed with the master's determination that the sanding rights were presently "incapable of being exercised for the purpose for which [they] were] created." As such, the judge upheld the master's conclusion that Baker's profit à prendre had ceased to exist.

In this appeal the defendants challenge the Superior Court judgment on this issue and also claim that the Superior Court lost jurisdiction of the case when title to

the servient estate was transferred from the plaintiff to another party. We ordered the case transferred to this court. Subsequently we ordered the appointment of a guardian ad litem to represent the interests of Baker.

For the reasons discussed below, we conclude that the defendants' jurisdictional claim is without merit in the circumstances of this case. We decide, however, on the basis of our recent decision in *First Nat'l Bank* v. *Konner*, 373 Mass. 463 (1977), that the judge erred in determining that Baker's profit à prendre had ceased to exist solely because the cultivation of cranberries on the dominant estate was no longer commercially feasible. Accordingly, we reverse.

We summarize the facts as found by the master and as adopted by the judge. The plaintiff is the present owner of 29.93 acres of land located on the south side of Route 28 in the Waquoit section of Falmouth. The land is bounded to the east and southeast by the property owned by Baker. On the easternmost border of the plaintiff's land, there exists a narrow dirt wagon road which leads south from Route 28, following the east-west boundary between the plaintiff's and Baker's property.

In 1871, much of the land now situated on either side of the wagon road was owned by a single individual, one John Tobey. In 1885 and 1886, Tobey conveyed the land east of the wagon road to two different purchasers. As part of the transaction, Tobey granted the buyers the privilege of taking sand from a portion of his remaining property.

In 1909, both of the parcels situated to the east of the wagon road were acquired by one William A. Tobey, a predecessor in title to Baker. In 1921, the land to the west of the wagon road was conveyed to the plaintiff's predecessor in title, one Frank R. Macedo. Macedo took title to the property subject "to the right of said William A. Tobey and his heirs and assigns to pass over [the] premises along the side of the cranberry bog in the location of the present wagon road ... for the purpose of cultivating [the

bog] and harvesting the berries . . . with the right and privilege of taking sand from *the upland* bank for the purpose of using same on said bog" (emphasis in original). When the plaintiff subsequently purchased the land, it also took title subject to these rights.

Baker purchased the land east of the wagon road in 1929. From that time until 1941, Baker cultivated cranberries on this land with the intention to sell the berries commercially. In 1941, he became mentally ill, and has remained so to the present. Cultivation of cranberries ceased on his land in 1943, although some berries were picked as late as 1946 or 1948.

The master found that, in its present condition, Baker's land is unsuitable for the cultivation of cranberries. Among other factors, the water table is too close to the surface to grow a crop without constant pumping; the land has more mud than peat; there is much salt in the ground; and the dikes and ditches needed to regulate water flow to the cranberry plants are in a state of disrepair.

The cost required to improve the condition of the land to the point where cranberries could be grown once more would exceed $5,000 an acre. Even if the necessary improvements were made, the labor and fuel costs to maintain the bog would exceed that of other bogs. Further, the maximum annual income from the operation might be only $2,000; it is more likely that the income would be closer to $500.

Aside from the condition of the land itself, certain other factors were seen to militate strongly against a successful cranberry operation. First, the cranberry market has suffered a serious decline between the 1940's and the present. Second, a current Federal marketing order might preclude Baker completely from raising cranberries for sale on the domestic market. On the basis of these findings, the master concluded that Baker's land in its present condition has no value to a commercial cranberry grower.

1. The defendants point out that, approximately three months after the plaintiff brought the case, the Milton Savings Bank foreclosed a mortgage it held on the plaintiff's land and purchased the property under a power of sale. In November, 1975, the bank attempted to sell the property. We are advised that a contract of sale was arranged between the bank and one Barry LaFlam. The plaintiff commenced an action in the United States District Court, District of Massachusetts, in an attempt to block the sale and to challenge the validity of the foreclosure proceeding. Shortly thereafter, the bank executed and delivered a deed of the property to the plaintiff. There is presently a lis pendens on record in an action commenced by LaFlam against the plaintiff and the bank.

There is no dispute that the plaintiff held legal title to the servient estate both when the action was commenced and when the master filed his report. There is also no dispute that, by the time the master heard evidence concerning the various changes in the title, the plaintiff had regained ownership. Further, the record indicates that, during the time that the Milton Savings Bank held title to the land, the plaintiff continuously asserted rightful ownership.

The defendants point out that "[a] bill will lie to remove a cloud on a title only if legal title and actual possession are united in the plaintiff." *MacNeil Bros. Co.* v. *State Realty Co. of Boston, Inc.*, 333 Mass. 770 (1956), and cases cited. Accordingly, it is the defendants' position that the lower court "lost" jurisdiction over the proceedings when title to the servient estate was assumed by the bank. We do not agree.

While it is true that a plaintiff seeking to quiet title must possess sufficient legal interest in the property so as to avoid dismissal for lack of standing, a claim of rightful legal ownership satisfies these requirements. Cf. *Davis* v. *Boston,* 129 Mass. 377 (1880); *Sullivan* v. *Finnegan,* 101 Mass. 447 (1869); *Jones* v. *Gingras,* 3 Mass. App. Ct. 393,

397-398 (1975). We note further that the defendants had an opportunity to present to the master evidence concerning the circumstances resulting in a transfer of title away from and then back to the plaintiff. In itself, this evidence had no automatic effect of divesting the court of jurisdiction of the case.

2. After the entry of judgment in the Superior Court, we decided the case of *First Nat'l Bank* v. *Konner*, 373 Mass. 463 (1977). At issue in *Konner* was the question whether a profit à prendre giving a right to take sand for the purpose of sanding a cranberry bog had been extinguished solely because the dominant estate had not been used recently for growing cranberries and was presently unsuitable for that purpose. We held, in the circumstances of that case, that commercial infeasibility alone could not extinguish the defendant's profit à prendre.

The facts of *Konner* are strikingly similar to those in the instant case. There, as here, the profit à prendre was created in the 1880's, and a portion of the dominant estate was used thereafter for the cultivation of cranberries. In both cases, the cultivation of cranberries ceased in the mid-1940's. The present conditions of the bogs in question are virtually identical: As in the instant case, the land owned by Konner was overgrown with bushes; the dikes were in a state of disrepair; and the soil contained a great deal of salt. Reclamation of the Konner cranberry bog was still possible, but cost of the effort, as in the present case, was estimated at $5,000 an acre. Finally, there existed in the *Konner* case a Federal crop control order which cast doubt on her ability to market cranberries domestically.[1] On these facts, we held in *Kon-*

---

[1] One arguable distinction must be mentioned here. In the instant case, the master found that the initial purpose for which the profit à prendre was created was the cultivation of a "viable commercial bog." None of the relevant sections of the deeds conveying the land directly support this finding. We stated in *Konner*, at 469 that "[i]t would be totally unwarranted to infer that the creator of the sanding right intended a commercially profitable venture to be a condition prece-

*ner* that the defendant's profit à prendre was neither
abandoned nor extinguished by obsolescence.

On the issue of abandonment, we stated in *Konner* that
a profit à prendre will not be deemed abandoned unless
there is both nonuser and an intent to abandon. *Konner,
supra* at 466. To establish such intent, it is "necessary to
show 'acts by the owner of the dominant estate conclu-
sively and unequivocally manifesting either a present
intent to relinquish the easement or a purpose inconsist-
ent with its further existence. *Willets* v. *Langhaar,* 212
Mass. 573, 575 [1912].' *Dubinsky* v. *Cama,* 261 Mass. 47,
57 (1927)." *Id.* at 466-467. We concluded that, although
the deterioration of the dominant estate was evidence of
an intent to abandon the profit, this evidence alone did
not establish such intent conclusively. *Id.* at 469.

Although there was ample evidence of nonuser with
respect to Baker's bog, no evidence other than deteriora-
tion of the bog has been introduced to show an intent to
abandon the profit à prendre. Neither can an intent to
abandon be inferred by the actions of Baker's legal guard-
ians with respect to the dominant estate. Cf. *Graves* v.
*Broughton,* 185 Mass. 174, 177-178 (1904); *Edson* v. *Mun-
sell,* 10 Allen 557, 568-569 (1865). The judge correctly
determined that Baker's sanding rights had not been
abandoned.

On the issue of obsolescence, we expressly rejected the
view that "a profit à prendre created for a special purpose
is extinguished when it would be commercially impracti-
cal or economically wasteful to attempt to revive the ac-
tivity which the profit was created to serve." *Konner,
supra* at 469. We stated that "[a]n interest in the nature
of an easement is not terminated when the purpose for
which it is created is neither totally nor permanently
impossible of enjoyment." *Id.* at 468.

---

dent to either the exercise or continuation of the right." The master's
inference, accepted by the judge, that a profit à prendre created for the
purpose of cranberry cultivation is contingent on the profitability of
that venture, must therefore be rejected.

These rulings directly apply here. Reclamation of the cranberry bog, although economically impractical, was not shown to be either factually or legally impossible. We recognize the strength of the argument that it is socially undesirable in some cases to permit impractical encumbrances to remain in effect. However, we think that relief against such cases can be achieved only from the Legislature. Cf. G. L. c. 184, § 30, inserted by St. 1961, c. 448, § 1.

3. Because the judgment below was based exclusively on the fact that it would be commercially infeasible to reclaim Baker's land for use as a cranberry bog, that judgment must be reversed. Pursuant to the request of the parties during oral argument, jurisdiction is retained in the Superior Court for the purpose of resolving factual issues remaining which concern the precise extent of the defendants' rights with respect to portions of the plaintiff's land.

*So ordered.*