Coz Chemical Corporation *vs.* Chapin Riley.[1]

Worcester. December 14, 1979. — April 11, 1980.

Present: Armstrong, Perretta, & Dreben, JJ.

*Contract,* Validity. *Payment. Corporation,* Officers and agents.

In an action against a defendant who was personally liable to the plaintiff both for payment of a corporation's trade debts to the plaintiff and for purchase of a subordinated debenture given to the plaintiff by the corporation, there was sufficient evidence to warrant findings that the defendant's agreement to make payments on the debenture was valid and that a $20,000 check signed by the defendant, drawn on corporate funds and payable to the plaintiff, was a part payment of the defendant's promise to buy back the subordinated debenture and not an advance payment on the corporation's future trade debt with the plaintiff. [565-569]

Civil action commenced in the Superior Court on September 29, 1976.

The case was heard by *Hallisey, J.,* on a master's report.

*James H. Barnhill* for the defendant.

*Charles B. Swartwood, III,* for the plaintiff.

Perretta, J. The plaintiff Coz Chemical Corporation (Coz) commenced suit against the defendant Worcester Moulded Plastics Co., Inc. (Worcester), on an account an-

---

[1] Two other defendants, neither of whom appealed, are Joseph Vuona and Worcester Moulded Plastics Co., Inc.

nexed and against the defendants Riley and Vuona on their joint and several personal guaranties of payment for materials sold to Worcester on that account. In two additional counts, Coz sought recovery against Riley and Vuona on their promise to purchase a subordinated debenture. Worcester had given this debenture to Coz in satisfaction of Worcester's trade debt to Coz which had remained outstanding as of the time of Worcester's 1973 reorganization in bankruptcy. The existence and validity of Worcester's post-1973 trade debt to Coz have never been in real dispute. Rather, the present controversy concerns whether a $20,000 check signed by Riley, drawn on Worcester's funds and payable to Coz, was an advance payment by Worcester on its future trade debt with Coz, or was a part payment on Vuona and Riley's promise to buy back the subordinated debenture. The master found the latter, and a judgment entered against all the defendants on the account annexed. The amount of Vuona and Riley's obligation on their promise to purchase the debenture was reduced by $20,000. We affirm the judgment.

The evidence presented to the master was reported pursuant to an amended order of reference, and the record before us consists of designated portions of the testimony and the master's report in which he expressly incorporated the exhibits by reference. Contrast *Jones v. Gingras,* 3 Mass. App. Ct. 393, 395 (1975); *Glynn v. Gloucester, ante* 454, 458 n.6 (1980). This record does not show that the master's subsidiary findings are clearly erroneous, *Peters v. Wallach,* 366 Mass. 622, 626 (1975), and we recite the facts as found by him and as supplemented by portions of the evidence. *Hastoupis v. Gargas, ante* 27, 28-29 (1980).

Coz is a manufacturer of thermoplastic material which it had supplied to Worcester before Worcester's 1973 reorganization in bankruptcy. Worcester manufactures plastic components. Some time in late 1973, Vuona and Riley became the president and treasurer, respectively, of Worcester, as well as directors and its principal stockholders. On

January 18, 1974, Vuona, as president of Worcester, executed a subordinated debenture agreement which was given to Coz in satisfaction of Worcester's outstanding trade debt as of November 1, 1973, the time of the reorganization. The debenture's face value was $77,936.98, and it was to mature on December 31, 1983. By the terms of the agreement Worcester could redeem the debenture prior to 1983 by paying a percentage of its face value as determined by the redemption schedule which was also set out in the agreement. At the time of Riley and Vuona's takeover of Worcester, there was a widespread petrochemical shortage which could have adversely affected Worcester's production. To prevent such an occurrence, they wished to reestablish Coz as a supplier of materials to Worcester. While Coz was willing to resume business with Worcester, it wanted assurance that its bills would be paid. Riley and Vuona provided such assurance on February 11, 1974, when they signed a joint and several personal guaranty of prompt payment by Worcester to Coz for materials and services supplied to the former at its request.

On or about April 11, 1974, Henry Coz, as president of Coz, sent a letter to Riley and Vuona for their signatures. The crucial portions of this document provided that Coz was willing to continue supplying materials to Worcester in exchange for prompt payment and Riley and Vuona's agreement "to endeavor to purchase from us at its face value [Worcester's subordinated debenture] . . . at varying intervals and at varying amounts commensurate with our supplying plastic materials." In consideration of the foregoing, Coz agreed that "we will endeavor to continue to supply plastic materials to Worcester . . . in the same manner as in previous years but we expressly do not commit ourselves to supplying any fixed amount at any fixed price." The letter also stipulated that payments on the agreement to buy back the debenture would begin when the Bankruptcy Court should issue the debenture and that "[t]he amount of any payment at any particular time shall be prearranged by Henry Coz and Joseph Vuona." Riley and Vuona signed

this document in their personal capacities, and not as officers or agents of Worcester, on April 18, 1974.[2]

On May 20, 1974, Henry Coz made an oral demand upon Vuona to commence payments on the agreement to buy back the subordinated debenture, and Vuona agreed to pay $20,000 by the end of the week. On July 17, 1974, Coz received a $20,000 check, which Riley had drawn on Worcester's funds and which carried the notation "Advance Payt." At that time Worcester's open trade account with Coz had an outstanding balance of $14,299.49. Coz carried this check on its books as applying to Worcester's pre-November, 1973, trade debt until it conducted an internal audit. As a result of that audit Coz changed the application of the check to a notes-receivable account, which reflected an outstanding balance of $57,936.88, i.e., the amount of the debenture less $20,000.

Coz shipped supplies to Worcester continuously between May, 1974, and September, 1976, and Worcester fully paid the invoices on these sales by checks, not including the disputed check, except for those invoices which are the subject of Coz's suit on the account annexed. That account is for supplies sent from May, 1976, through September, 1976. It is on these facts that the master found that Riley intended the check to be applied against his contract to buy back the debenture.

Riley argues that the April 18, 1974, agreement is illegal because it is in violation of the terms of Worcester's subordinated debenture agreement with Coz. Basically that agreement provides that Worcester cannot make any payments on the debenture to Coz which would be in, or cause a, default in Worcester's superior obligations. Any such pay-

---

[2] In his brief, Riley characterizes this document as an ultimatum by Coz because it knew that he would lose his investment in Worcester if Coz shut off its supplies. To the extent that Riley intimates that we should be suspicious of the agreement because of economic duress, we point out that no element of such duress appears in the record before us. See *International Underwater Contractors, Inc.* v. *New England Tel. & Tel. Co.*, 8 Mass. App. Ct. 340, 342 (1979), and cases cited.

ment by Worcester to Coz was to be received by it in trust for the benefit of, and paid over to, the superior creditors of Worcester. We need not consider Riley's argument of illegality because he makes no claim that he is a superior creditor of Worcester; and, therefore, he is without standing to complain. If the subordinated debenture agreement has been violated, it is the superior creditors who are harmed and not Riley. We will not grant Riley relief from a contract which he executed for his benefit and to the possible detriment of others whose rights he now seeks to assert through this allegation.

It is also unnecessary to consider Riley's claim that the April 18, 1974, agreement is illusory and vague and therefore unenforceable. We are not here concerned with the future enforcement of this agreement. What Riley claims by this argument is a right to avoid his obligation under the agreement after having accepted its benefits. The law recognizes no such right. To the contrary, "[w]hen a contract has been executed on one side, the law will not permit the injustice of the other party retaining the benefit without paying unless compelled by some inexorable rule." *Silver* v. *Graves*, 210 Mass. 26, 30 (1911). See *Cygan* v. *Megathlin*, 326 Mass. 732, 735-736 (1951); 1 Williston, Contracts § 49, at 159 (3d ed. 1957); Calamari, Forging a Good Unilateral Contract or a Series of Good Contracts out of a Bad Bilateral Contract, 1961 Wash.U.L.Q. 367.

Riley next argues that Coz deliberately misapplied the check to his (Riley's) personal debt. He reasons that because Coz could not apply the check to Worcester's pre-November, 1973, trade debt which had been discharged in bankruptcy, and because Riley's debt could not be satisfied by use of Worcester's funds, *Childs, Jeffries & Co., Inc.* v. *Bright*, 293 Mass. 290, 294 (1933); *Reardon Importing Co.* v. *Security Trust Co.*, 318 Mass. 304, 306 (1945), Coz could only apply the check to Worcester's future trade debt. Only Worcester has the right to complain of the improper use of its corporate funds to pay the personal obligation of an officer, and Worcester has not complained (see note 1, *supra*).

Riley's final contention is that a creditor must apply a payment to the debt specified by the debtor. *Spinney* v. *Freeman*, 230 Mass. 356, 358 (1918). While this is so, it is equally true that if neither the debtor nor a statute specifies how a payment is to be applied, the creditor may apply it as he chooses. *Tudor Press, Inc.* v. *University Distrib. Co.*, 292 Mass. 339, 342 (1935). *Rock-Ola Mfg. Corp.* v. *Music & Television Corp.*, 339 Mass. 416, 421 (1959). 15 Williston, Contracts § 1795, at 388-392 (3d ed. 1972). Riley made no specification, and the master found that Riley intended the check to be applied to his personal debt. Riley attacks this finding as being unsupported by the evidence and clearly erroneous. He alleges an absence of any evidence that he knew of Henry Coz's demand to Vuona on May 20, 1974, or that he (Riley) and Vuona agreed to make the payment. The master's subsidiary findings, which are supported by the evidence, show that the check issued by Riley, the treasurer of the corporation, was in the exact amount agreed upon by Vuona, the president of the corporation, and Henry Coz. By the terms of the April 18 agreement, Riley consented to these two men's setting the amount and date of any payments without any consultation with him. The amount of the check did not coincide with the amount of Worcester's then outstanding trade debt. Moreover, during the next two years Coz shipped supplies to Worcester which fully paid the invoices on these sales, except those that are the subject of the account annexed, and Worcester did so without reliance upon an application of the disputed check by Coz to this trade debt. These facts, as found by the master, and the inferences which can be drawn from them support the conclusion that Riley intended that Coz apply the check to his and Vuona's obligation to purchase Worcester's subordinated debenture.

Riley's remaining contentions are dependent upon a conclusion that Coz misapplied the check, but, because of our discussion above, we need not consider them.

*Judgment affirmed.*