NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1458                                    Appeals Court

  WILLIAM T. BARRASSO, JR.  vs.  NEW CENTURY MORTGAGE CORPORATION
                        & others.[1]


                       No. 15-P-1458.

      Suffolk.    October 20, 2016. - February 8, 2017.

          Present:  Hanlon, Sullivan, & Blake, JJ.


Real Property, Mortgage, Record title.  Mortgage, Foreclosure,
     Real estate, Assignment.  Assignment.  Contract,
     Assignment, Modification.  Negotiable Instruments,
     Assignment, Note.  Practice, Civil, Summary judgment.
     Estoppel.


     Civil action commenced in the Land Court Department on
March 30, 2012.

     The case was heard by Howard P. Speicher, J., on a motion
for summary judgment.


     Glenn F. Russell, Jr., for the plaintiff.
     Roger Soun for the defendants.

---

     [1] Bank of America, N.A., as successor by merger to LaSalle
Bank, N.A., as trustee for the C-BASS Mortgage Loan Asset-Backed
Certificates Series 2007-SP2; Deutsche Bank National Trust
Company, as trustee for New Century Home Equity Loan Trust
Series 2005-C, Asset Backed Pass-Through Certificates; Ocwen
Loan Servicing, LLC; and U.S. Bank, National Associates, as
successor trustee for the C-Bass Mortgage Loan Asset-Backed
Certificates, Series 2007-SP2.

SULLIVAN, J.  The plaintiff, William T. Barrasso, Jr., brought this quiet title action, alleging that two mortgages on his condominium unit constitute a cloud on his title.  See G. L. c. 240, § 6.  He claimed that the encumbrances should be stricken from the land records because the original mortgagee no longer exists and the identity of any present mortgagee cannot be ascertained.  A judge of the Land Court awarded summary judgment to the defendants, determining that U.S. Bank, National Associates (U.S. Bank), holds the first mortgage as trustee for the C-BASS Mortgage Loan Asset-Backed Certificates Series 2007-SP2 and that Deutsche Bank National Trust Company (Deutsche Bank) holds the second mortgage as trustee for the New Century Home Equity Loan Trust Series 2005-C, Asset-Backed Pass-Through Certificates.

We affirm those portions of the judgment entered in favor of the defendants dismissing the claims asserted by Barrasso and granting affirmative relief to U.S. Bank.  We vacate the portion of the judgment granting Deutsche Bank affirmative relief in the form of a declaration as to the validity of its title.

Background.  We set out the facts in the summary judgment record viewed in the light most favorable to the plaintiff.  See Cuddyer v. Stop & Shop Supermkt. Co., 434 Mass. 521, 522 (2001).  On or about September 16, 2005, Barrasso purchased unit 315 of

the Walnut Place Condominium, located at 8 Walnut Street in Peabody (property), for $264,000. To finance the purchase, Barrasso obtained two loans from New Century Mortgage Corporation (New Century), memorialized with two promissory notes and secured by two mortgages on the property. The larger of the two notes is in the amount of $211,200 (first note), and the smaller is in the amount of $52,800 (second note) -- together, they comprised the entire purchase price.

The original of the first note is now physically in the possession of U.S. Bank. Although the location of the original second note cannot be ascertained from the record, there appears to be no controversy between the parties about whether it is in Deutsche Bank's control.

In connection with the notes, Barrasso granted a first mortgage to New Century, and a second mortgage to New Century, both of which are dated September 16, 2005, and both of which were recorded in the registry of deeds. Before the execution of the second mortgage, on or about March 2, 2005, New Century granted Ocwen Loan Servicing, LLC (Ocwen), a limited power of attorney, with Ocwen's enumerated powers including the authority to "execute, acknowledge, seal and deliver . . . assignments of deed of trust/mortgage and other recorded documents."

1. <u>New Century bankruptcy and the postbankruptcy transfer of the first mortgage</u>. New Century filed a voluntary petition

for bankruptcy in the United States Bankruptcy Court for the District of Delaware (Bankruptcy Court) on or about April 2, 2007. U.S. Bank contends (and Barrasso disputes) that, notwithstanding New Century's bankruptcy, the first mortgage was transferred to the C-BASS Mortgage Loan Asset-Backed Certificates Series 2007-SP2 (C-BASS Trust) shortly thereafter, on or before June 29, 2007, via a pooling and servicing agreement dated June 1, 2007 (2007 PSA). The 2007 PSA listed C-BASS ABS, LLC, as "Depositor"; Credit-Based Asset Servicing and Securitization LLC as "Seller"; Litton Loan Servicing LP (Litton) as "Servicer"; and LaSalle Bank National Association (LaSalle) as "Trustee." A mortgage loan schedule associated with the 2007 PSA specifically identified the first mortgage by loan number as included in the assets transferred to the C-BASS Trust. Additionally, a limited power of attorney dated June 22, 2007, granted Litton the power to "execute, acknowledge, seal and deliver" mortgage assignments on behalf of New Century. However, New Century was not listed as a party to the 2007 PSA, and no assignment of the first mortgage by New Century to any other entity was immediately recorded in connection with the 2007 PSA.

On January 17, 2008, Barrasso signed a loan modification agreement (modification agreement) effective December 1, 2007. The modification agreement was between Barrasso and LaSalle, as

trustee for the C-BASS Trust, and specifically referred to the first mortgage and to the street address of the property. Several months later, during the fall of 2008, LaSalle merged into Bank of America, National Association (Bank of America). Bank of America became trustee of the C-BASS Trust and successor to LaSalle in connection with the modification agreement.

In an assignment dated April 14, 2009, Litton, in its capacity as attorney-in-fact for New Century, assigned the first mortgage to Bank of America, as successor by merger to LaSalle and as trustee for the C-BASS Trust. That assignment was recorded in the registry of deeds on or about April 8, 2010.

Barrasso commenced this action by filing a quiet title complaint in the Land Court on March 30, 2012. At some point, U.S. Bank replaced Bank of America as trustee for the C-BASS Trust. In an assignment dated June 5, 2013, Ocwen, as Litton's successor and as attorney-in-fact for Bank of America, purported to assign the first mortgage to U.S. Bank as trustee for the C-BASS Trust.[2] The April 14, 2009, assignment by Litton to Bank of America, and the June 5, 2013, assignment by Ocwen to U.S. Bank are the only assignments of the first mortgage appearing in the recorded title chain.

---

[2] A limited power of attorney executed by Bank of America on or about January 13, 2009, granted Litton the power to modify and assign mortgages.

2. <u>Prebankruptcy transfer of the second mortgage</u>. Deutsche Bank contends (and Barrasso disputes) that on or before December 6, 2005, the second mortgage was transferred into the New Century Home Equity Loan Trust Series 2005-C, Asset-Backed Pass-Through Certificates (Home Equity Trust). A pooling and servicing agreement related to that trust, dated November 1, 2005 (2005 PSA), listed New Century Mortgage Securities, Inc., as "Depositor," JPMorgan Chase Bank, National Association, as "Servicer," and Deutsche Bank National Trust Company as "Trustee." A mortgage loan schedule associated with the 2005 PSA specifically identified the second mortgage as among those transferred to the Home Equity Trust. New Century, however, was not named as a party to the 2005 PSA. Additionally, no assignment of the second mortgage by New Century to any other entity was immediately recorded in connection with the 2005 PSA.

While this case was pending, Ocwen, as attorney-in-fact for New Century, purported to assign the second mortgage to Deutsche Bank as trustee for the Home Equity Trust in an assignment dated August 10, 2012.[3] The assignment of the second mortgage from Ocwen to Deutsche Bank is the only assignment of the second mortgage appearing in the recorded title chain.

---

[3] By that time, Ocwen had become the loan servicer for Deutsche Bank, which is trustee of the Home Equity Trust.

3.  Land Court litigation.  In the Land Court, Barrasso claimed that New Century could not have effectively transferred either of the mortgages after the date of New Century's bankruptcy filing -- and certainly could not have done so after the Bankruptcy Court approved a liquidation plan on July 15, 2008.  Accordingly, Barrasso claimed that the recorded assignments of both the first and second mortgage were void.  As to the theory that valid, off-record assignments existed and were confirmed in one or more of the recorded documents, Barrasso claimed that neither the 2005 PSA nor the 2007 PSA operated as a valid assignment because New Century, the original mortgagee, was not a party to either document.  The defendants argued that the recorded assignments were valid because the bankruptcy did not strip New Century of the power to assign one or both mortgages, and they were confirmatory of off-record assignments.

A judge of the Land Court concluded that the bankruptcy was not a bar to the transfer, that the undisputed facts showed a transfer of the mortgages to the defendant trusts, and, alternatively, that the modification agreement estopped Barrasso from disputing the state of the title as to the first mortgage as of the date of the modification agreement.  Citing Eaton v. Federal Natl. Mort. Assn., 462 Mass. 569, 577-578 (2012), the judge also reasoned that "even if there were any doubt as to who

holds the [first] mortgage, the note-holder could simply compel a transfer of the mortgage." Judgment entered dismissing Barrasso's claims and affirmatively declaring that U.S. Bank held the first mortgage and Deutsche Bank held the second mortgage.

Discussion. "We review a decision to grant summary judgment de novo." Boazova v. Safety Ins. Co., 462 Mass. 346, 350 (2012). We review the record to determine whether, in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Commissioners of the Bristol County Mosquito Control Dist. v. State Reclamation & Mosquito Control Bd., 466 Mass. 523, 528 (2013). The moving party assumes the burden of affirmatively demonstrating that no genuine issue of fact exists on any relevant issue, even if the movant would not bear the burden of proof on that issue at trial. See Attorney Gen. v. Bailey, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982).

However, if the nonmoving party, here Barrasso, fails to establish an essential element of the claim asserted, any remaining disputed facts are immaterial. See Sarkisian v. Concept Restaurants, Inc., 471 Mass. 679, 681 (2015). Barrasso seeks to have the titles held by U.S. Bank and Deutsche Bank declared invalid before either bank can foreclose. Only a

wholly void assignment in the chain of title will invalidate a foreclosure, however.  A deficiency in an assignment "that makes it merely voidable at the election of one party or another" does not invalidate the title of the assignee, or that of the postforeclosure owner.  Sullivan v. Kondaur Capital Corp., 85 Mass. App. Ct. 202, 206 n.7 (2014).  Bank of N.Y. Mellon Corp. v. Wain, 85 Mass. App. Ct. 498, 502-503 (2014).  Accordingly, as a threshold matter, Barrasso may prevail at summary judgment only upon a showing that there is a genuine dispute of material fact as to whether the recorded assignments of the first and second mortgages (to U.S. Bank and Deutsche Bank, respectively) are entirely void -- not merely voidable.  See id. at 502 ("[W]here the foreclosing entity has established that it validly holds the mortgage, a mortgagor in default has no legally cognizable stake in whether there otherwise might be latent defects in the assignment process").

We consider the assignment of the first mortgage and the assignment of the second mortgage in turn.

1.  The first mortgage.  As discussed above, Barrasso contends that the first mortgage was never effectively transferred to the C-BASS Trust because (i) New Century's status as a bankruptcy petitioner as of April 2, 2007, rendered it incapable of transferring its interest in the first mortgage after that date without court approval, and (ii) New Century,

the original mortgagee, is not a party to the 2007 PSA and no other document shows a transfer of the first mortgage from New Century to any of the parties to the 2007 PSA. We need not, however, determine whether a genuine dispute of material fact exists as to either of these issues because we agree with the motion judge that the modification agreement operated to estop Barrasso from claiming any entity other than LaSalle (as trustee of the C-BASS Trust) held the first mortgage on or after December 1, 2007. In voluntarily entering the modification agreement, Barrasso was estopped from later claiming that LaSalle was not the holder of the first mortgage.

The modification agreement signed by Barrasso plainly referred to the first mortgage by its recording references, and defined that document as the "Security Instrument." It stated that "[t]he Security Instrument . . . encumbers the property," and correctly referred to Barrasso's home by street address and by incorporating a full legal description attached as its exhibit A. The modification agreement defined the "Lender/Grantee" as LaSalle in its capacity as trustee for the C-BASS trust, and bore the signature of a vice-president of LaSalle. The modification agreement provided a fixed rate of interest on Barrasso's loan for twenty-two months. The text of the modification agreement included a number of representations as to which "Borrower," defined as Barrasso, "understands and

agrees," namely that the mortgage remained valid and he waived all forms of challenge to it.[4]

Barrasso now seeks to avoid the representations in the modification agreement, after having voluntarily entered that agreement and accepted its benefits, resulting in corresponding detriment to LaSalle as trustee of the C-BASS Trust.  "The law recognizes no such right."[5]  Coz Chem. Corp. v. Riley, 9 Mass. App. Ct. 564, 568 (1980).  Estoppel is established where a party has shown "(1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission."  Reading Co-op. Bank v. Suffolk Constr. Co., 464 Mass. 543, 556 (2013), quoting from Bongaards v. Millen, 440

---

[4] Those representations included (i) "[a]ll the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder"; (ii) "[a]ll covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified . . ."; and (iii) "Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument."  Barrasso's signature on the modification agreement is notarized and dated January 17, 2008.

[5] Notably, a showing of intentional fraud by the allegedly estopped party is not required to sustain an estoppel defense.  "[T]he test appears to be whether in all the circumstances of the case conscience and duty of honest dealing should deny one the right to repudiate the consequences of his representations or conduct. . . ."  McLearn v. Hill, 276 Mass. 519, 525 (1931).

Mass. 10, 15 (2003). Having accepted and benefited from a modification of the first mortgage offered by LaSalle in 2007, Barrasso cannot now escape enforcement of the first mortgage by questioning LaSalle's ownership of it as of the effective date of the modification.

Because the modification agreement is dispositive of the true identity of the first mortgage holder as of December 1, 2007, in relation to the parties named in this case, it follows that the written and recorded assignment dated April 14, 2009, was confirmatory of a transfer that had previously occurred. Likewise, once title is determined to have been squarely within the hands of Bank of America as of the April 14, 2009, assignment, there is no basis for any challenge to Bank of America's further transfer to U.S. Bank via another assignment. Accordingly, on the undisputed facts in the summary judgment record, Barrasso was not entitled to a removal of the first mortgage as a cloud or encumbrance on his title as a matter of law.

2. The second mortgage. Barrasso asserts that Deutsche Bank did not provide sufficient evidence to conclude that it holds title to the second mortgage consistent with the instruction set forth by the Supreme Judicial Court in U.S. Bank, Natl. Assn. v. Ibanez, 458 Mass. 637, 650 (2011). We agree that a genuine issue of material fact exists on this

record regarding Deutsche Bank's title to the second mortgage, because the record does not show that the "Depositor" named in the 2005 PSA (or any other party to that agreement) ever received an assignment of the second mortgage from New Century. See ibid.

This court may, however, consider any grounds supporting the motion judge's decision. See American Intl. Ins. Co. v. Robert Seuffer GmbH & Co. KG, 468 Mass. 109, 113, cert. denied, 135 S. Ct. 871 (2014); John Duffy, D.C. v. Amica Mut. Ins. Co., 89 Mass. App. Ct. 297, 298-299 (2016). The judge did not err in allowing summary judgment for Deutsche Bank as to the second mortgage because Barrasso has failed to demonstrate as a matter of law that the second mortgage itself -- rather than merely a recorded assignment of that mortgage -- is wholly void and should be stricken from the record.

In his third amended complaint, Barrasso sought a determination that both mortgages "be quieted and removed from Plaintiff's title." In order to have the second mortgage removed entirely from his title, Barrasso would have to demonstrate not just that Deutsche Bank is not entitled to enforce it, but that no one else is, either. See Oum v. Wells Fargo, N.A., 842 F. Supp. 2d 407, 415 (D. Mass. 2012), abrogated on other grounds by Culhane v. Aurora Loan Servs. of Neb., 708 F.3d 282 (1st Cir. 2013) ("Construing the assignments as invalid

. . . would have an impact only on the relationship between the parties to the assignment contract").

Whether the mortgage granted to New Century by Barrasso should now be deemed void -- by virtue of New Century's bankruptcy or otherwise -- is a question entirely separate from whether Deutsche Bank, in particular, is the current mortgagee.[6] In fact, some party will be able to enforce the second mortgage on behalf of the holder of the second note.  See Eaton v. Federal Natl. Mort. Assn., 462 Mass. at 576-577.  As the judge correctly stated, whoever holds the second mortgage holds it in trust for the benefit of whoever is entitled to enforce the corresponding note.  The noteholder is entitled to demand an assignment of that instrument for purposes of foreclosure.

---

[6] Longstanding Massachusetts jurisprudence holds that "[a] bill will lie to remove a cloud on title only if legal title and actual possession are united in plaintiff."  McCartin Leisure Indus., Inc. v. Baker, 376 Mass. 62, 66 (1978), quoting from MacNeil Bros. Co. v. State Realty Co. of Boston, 333 Mass. 770 (1956).  Additionally, Massachusetts adheres to the "title theory" of mortgage law, which means that when real property is encumbered by a mortgage, legal title remains with the mortgagee until the mortgage is foreclosed or the debt is paid, while the mortgagor holds only equitable title.  See Faneuil Investors Group, Ltd. Partnership v. Selectmen of Dennis, 458 Mass. 1, 6 (2010); Bevilacqua v. Rodriguez, 460 Mass. 762, 774 (2011); Abate v. Fremont Inv. & Loan, 470 Mass. 821, 832 (2015).  Applying these two concepts, the Federal District Court in Oum concluded that a mortgagor cannot bring a quiet title action against a mortgagee in Massachusetts where the mortgagor does not allege that his or her underlying debt has been paid.  842 F. Supp. 2d at 412 & n.10.  In light of the dicta in Abate v. Fremont Inv. & Loan, supra at 835, that a quiet title action is available to a mortgagor bringing a preforeclosure challenge to purported mortgagee's title, we decline to reach the issue.

Ibid.  The fact that the second note exists and that it is held by or within the control of Deutsche Bank are undisputed facts. Accordingly, any genuine factual dispute about that validity of the assignment of the second mortgage to Deutsche Bank is immaterial to the question of whether the original second mortgage constitutes a cloud on Barrasso's title.

Conclusion.  Those portions of the judgment dismissing with prejudice all claims asserted by Barrasso, and granting relief to U.S. Bank in the form of declarations regarding its mortgage interests in the property, are affirmed.  The portion of the judgment awarding affirmative relief to Deutsche Bank declaring its mortgage interest in the property is vacated, because there are material facts in dispute concerning its title. [7]

So ordered.

---

[7] At the time of entry of judgment U.S. Bank's counterclaims for money damages were voluntarily withdrawn.  The judge treated the parties' arguments under the quiet title statute as requests for reciprocal declaratory relief.  On appeal, Barrasso makes no claim of error regarding this aspect of the relief granted.